RUSSELL S. CHESSON v. NELLO L. TEER COMPANY, A CORPORATION.

(Filed 24 September, 1952.)

**1. Highways § 4b—**

A motorist driving upon a highway which is under construction or repair cannot assume that there are no obstructions or defects ahead, but is under duty to keep his vehicle under such control that he can stop it within the distance he can see a proper barrier.

**2. Automobiles § 8a—**

The duty to keep a proper lookout requires increased vigilance when the motorist's danger is increased by conditions obscuring his view.

**3. Highways § 4b—Plaintiff's own negligence held proximate cause of accident at barricade of highway under construction.**

Plaintiff's evidence tended to show that defendant construction company placed no signs or warnings along the highway under construction, that while the shoulders of the road had not been finished, plaintiff was unaware that the paving had not been completed, that defendant had erected a barrier across the highway at the end of the paving which plaintiff testified that he could have seen three hundred feet away, but that the barrier was obstructed on the occasion in question by a car which was turning around in the highway in front of the barrier, that plaintiff slackened his speed upon seeing the other car but that after it had cleared his lane of travel he accelerated his speed, at which time he first saw the barrier only forty feet ahead, that he immediately applied his brakes but was unable to stop, that he turned left into a detour, lost control of his car, ran off the road on the right-hand side of the detour, hit and broke a cement drain, causing his car to turn over and over. *Held:* The conduct of the innocent motorist in obscuring the barrier cannot result in liability on the part of defendant, it being apparent that plaintiff's own negligence in failing to keep a proper lookout and in traveling at a speed greater than was reasonable and prudent under the circumstances, was the real, efficient and sole proximate cause of the accident, and defendant's motion to nonsuit was properly allowed.

**4. Automobiles § 18g (5)—**

The physical facts at the scene of an accident may speak louder than words.

APPEAL by plaintiff from *Frizzelle, J.,* April Term, 1952, of WASHINGTON.

This is a civil action to recover for personal injuries and property damage sustained by the plaintiff as a result of the alleged negligence of the defendant. The pleadings raise the usual issues of negligence, contributory negligence and damages.

In March, 1950, the defendant, Nello L. Teer Company, a corporation, entered into a contract with the State Highway and Public Works Commission of North Carolina to hard surface with asphalt a certain public road leading from a point near the town of Plymouth in Washington

County and running eastwardly to Mackeys to intersect with U. S. Highway No. 64, and to construct dirt shoulders along said road. This road was built substantially along the route of an existing dirt road. It is intersected by a number of public roads, among them being one leading from Albemarle Beach.

On the date complained of, all the surfacing of the highway had been completed and the road opened to traffic, with the exception of 1,000 feet along which the contractor had provided a detour. The shoulders had not been constructed.

Shortly after noon, on Labor Day, 4 September, 1950, the plaintiff was driving his car en route from Albemarle Beach to Plymouth and entered this highway. He was accompanied by Michael Trueblood. The plaintiff testified that he knew the road was under construction and that the shoulders had not been built; that he did not know the paving had not been completed. After he had proceeded westwardly on the new highway for approximately two miles, at a speed of about 40 miles per hour, he noticed a car ahead of him apparently trying to turn around. The car turned and backed one time and came back around and proceeded eastwardly on the south side of the road. When he saw the car he slowed down to about 25 or 30 miles per hour, but accelerated his speed when the car completed its turn. Then for the first time he noticed a barrier across the highway just beyond the point where the car had turned. The barrier consisted of a pole about 5 or 6 inches in diameter at the big end; it was about 3 feet above the pavement and was resting on a mound of dirt on his right-hand side and in the 'groove of a couple of cross-poles on the left-hand side. "I was not traveling over 35 miles per hour when I saw the barricade. The brakes on my car were in good order. It was impossible to stop my car in the space between the barricade and me when I saw it . . . I first saw the pole and then looking for some alternative, I looked and saw this road (the detour) to the left. As soon as the other car cleared the lane, I pulled sharply to the left. The detour was on the left side, to the south of the highway. The detour was part of the old road which was being replaced by the newly constructed road. It turned pretty sharp to the left, and then back to the right. . . . The shoulder had not been built at the point where the detour led off the pavement. There was a drop from the paved part down to the dirt, a 8-inch drop. Beyond that was a grader mark where it had been cut, about 6 inches deep. . . . As I turned to enter the detour I dropped off the pavement and when I hit this other mark the car looked like it was going out of control, and I applied my brakes again to keep it from overturning. . . . Then I pulled back to the right and went to the side of the road on the right-hand side of the detour. That put me between the old road and the new road. There was a cement drain tile which ran under the detour. The end projected out

of the roadway. I struck it and it crumbled and fell in. The car was thrown over, and turned over and over." The car, a 1941 Chevrolet, was damaged beyond repair. He also testified there were no signs on or along the highway warning motorists of the detour or barricade. Plaintiff was seriously injured.

Michael Trueblood, a witness for the plaintiff, testified, "When we came to a point just east of White Marsh Church, there was a pole barrier in the road. I first saw a car turning around. When it got turned around it headed toward Mackeys. We were right on the pole, about 40 feet away, then. . . . When I first saw the car that turned around on the pavement we were about one-half mile away. It stopped on the same side we were on, and the next thing I knew it was backing out trying to turn around. . . . We were right on the barricade when he turned so we could see it—about 20 feet away. . . . We could not tell what this car was going to do, the way he was driving. . . . We were going about 35 or 40 miles per hour before we came to the barrier. The old road is close to the barrier, 20 or 25 feet. . . . Chesson applied his brakes and tried to stop when he saw the barricade. . . . He could not stop, and turned off into the old road."

Other witnesses for the plaintiff testified that they had traveled over this road, going in the same direction the plaintiff was traveling, a day or so before the plaintiff had his accident; that there were no signs warning of the approach to the end of the pavement or of a detour ahead, but that they saw the barrier before reaching it and had no difficulty turning off on the detour; that the drop of 6 or 8 inches in going from the paved highway to the detour was not an abrupt drop but an incline or ramp. One of these witnesses, a police officer of the Town of Roper, testified that he was driving 30 or 35 miles an hour as he approached the barrier; that he could see it and had no difficulty in stopping his car before he got to it; that, "At any reasonable or proper speed you could stop before you got to that barrier."

At the close of the plaintiff's evidence, the defendant moved for judgment as of nonsuit. The motion was denied. Whereupon, the defendant offered numerous witnesses who testified contradicting the plaintiff's evidence with respect to the presence of warning signs and corroborated the plaintiff's witnesses with respect to the gradual incline of the shoulder leading from the highway to the detour. The defendant also offered evidence to the effect that the barricade could be seen for a distance of 800 to 1,500 feet.

At the conclusion of the defendant's evidence, the plaintiff took the stand in rebuttal and on cross-examination testified, "The barrier in my estimation would be hard to distinguish because of its color, and unless you were riding along and had knowledge of that barrier, and were look-

ing directly for it, I would not say that I could see it over 300 feet.  I imagine I could see it 300 feet if it had not been obstructed."

In apt time the defendant renewed its motion for judgment as of nonsuit and the motion was allowed and plaintiff appeals, assigning error.

*Bailey & Bailey for plaintiff, appellant.*
*Rodman & Rodman for defendant, appellee.*

DENNY, J.  The accident complained of occurred in broad daylight. And when the plaintiff's evidence is considered in the light most favorable to him, we do not think it is sufficient to establish actionable negligence on the part of the defendant.

The plaintiff's evidence points unerringly to the fact that he could have seen the barrier on the highway in ample time to have stopped his car before reaching it, if the barrier had not been obscured by another automobile.

What effect then did the conduct of an innocent motorist in obscuring the barrier from plaintiff's view have upon the rights of the litigants? The late *Chief Justice Stacy* pointed out what will and what will not constitute insulating negligence under such circumstances, in *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808, where he said: "The rule is, that if the original act be wrongful, and would naturally prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not in themselves wrongful, the injury is to be referred to the wrongful cause, passing by those which are innocent. *Scott v. Shepherd,* 2 Bl. 892 *(Squib case).*  But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission on the part of another or others, the injury is to be imputed to the last wrong as the proximate cause, and not to the first or more remote cause."

In applying the above rule to the facts in this case, we cannot concede that the placing of a barrier across a highway that is under construction, when such barrier is erected by the contractor for the protection of the traveling public, is within itself a wrongful act, or that such obstruction "would naturally prove injurious to some person or persons."  The very presence of another automobile on the highway under the conditions and circumstances detailed by the plaintiff's evidence, called for caution on his part.  In fact, he so testified in the trial below: "I had decreased my speed when I saw a car turning around ahead of me. . . . It was backing out from the road that lead around—the detour. . . . that . . . indicated to me that there was some necessity for care on my part.  I slowed down. Then after the car got out of my way I accelerated my speed."  Even so,

it is apparent that he did not exercise reasonable care, under the circumstances, for his own safety.

One who operates an automobile on a public highway, which is under construction or repair, cannot assume that there are no obstructions or defects ahead. 60 C.J.S., Section 201 (d), page 528, *et seq.; Humphrey v. Wayne County,* 257 Mich. 398, 241 N.W. 212; *Western Union Tel. Co. v. Stephenson* (C.C.A., 5th Cir.), 36 F. 2d 47; *Schwartz v. Jaffe,* 324 Pa. 324, 188 A. 295; *Duke v. Consolidated Gas Co. of N. Y.,* 244 App. Div. 337, 279 N.Y.S. 442. In such instances it is the duty of a motorist to keep his car under such control that it can be stopped within the distance within which a proper barrier ahead can be seen. *Western Union Tel. Co. v. Stephenson, supra;* Blashfield's Cyclopedia of Automobile Law and Practice, Volume 5, section 3311, page 439. The last cited authority also states in the same section that, "If he (a motorist) is able to stop after seeing a . . . contractor's barrier across a highway, but fails to do so, his contributory negligence will bar his recovery notwithstanding the failure of the contractor to provide statutory signals."

A motorist should exercise reasonable care in keeping a lookout commensurate with the increased danger occasioned by conditions obscuring his view. Blashfield's Cyclopedia of Automobile Law and Practice, Volume 5, section 3318, page 448; 60 C.J.S., section 201 (h), page 541; *Humphrey v. Wayne County, supra; Eller v. R. R.,* 200 N.C. 527, 157 S.E. 800; *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326, and cases cited.

The case of *Eller v. R. R., supra,* involved a collision between the plaintiff's automobile and one of the defendant's passenger trains. To show negligence on the part of the defendant, the plaintiff, among other things, relied upon the excessive speed of the train and the failure to give any warning by bell or otherwise of its approach. Another element of negligence insisted upon by the plaintiff was that a car crossing the track at the time he arrived obscured his view. The Court said: "Such obstruction, however, was not due to any fault of the railroad company, and, indeed, was a circumstance wholly beyond its control." See *Lee v. R. R.,* 180 N.C. 413, 105 S.E. 15; and *Moore v. R. R.,* 203 N.C. 275, 165 S.E. 708.

Likewise, in the case of *Murray v. R. R., supra,* the plaintiff, an employee of the defendant railroad, and other of its employees, were engaged in repairing a grade crossing. To protect the workmen, the railroad had placed a dump car as a barricade on the concrete portion of the highway. As a Mrs. Elliott, a codefendant, approached the crossing, she overtook another car traveling in the same direction and on the same side of the highway. She speeded up to pass the car ahead and just at that moment it turned to the left to go around the barricade. Then Mrs. Elliott kept straight ahead, not seeing the barrier until too late to stop. She ran into

the barrier and seriously injured the plaintiff. It was contended there, as in the instant case, that the defendant railroad company failed to provide sufficient warning to travelers on the highway that there was a barrier at the crossing. It was also argued that Mrs. Elliott was prevented by the car ahead from seeing the obstruction which had been placed in the highway by the defendant railroad, and that she did not see it until the car ahead turned to the left, when it was too late for her to stop in time to have averted the accident. This Court held that plaintiff's injury was proximately caused by Mrs. Elliott's failure to exercise ordinary care and to observe the laws of the road in the operation of her automobile, independent of any act of omission of duty on the part of the defendant railroad.

In applying the foregoing principles of law to the facts in this case, it is our opinion, and we so hold, that the negligence of the plaintiff was the proximate cause of his injuries and damage. He was traveling on a highway that he knew was under construction. His guest passenger saw the automobile stop on the highway when they were one-half mile away. The plaintiff drove his car the one-half mile and was within 40 feet of the barrier across the highway as the other car cleared his side of the road. When the car completed its turn, he accelerated his speed although the barrier was in plain view only 40 feet ahead. When he did see the barrier, he applied his brakes but could not stop. As soon as the other car cleared the south lane of the highway, he turned left into the detour, lost control of his car, ran off the road on the right-hand side of the detour, broke a cement drain, and the car had such momentum that it not only turned over, but, in his language "turned over and over." It would seem to be another case where the physical facts speak louder than words. *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88.

The judgment of the court below is
Affirmed.