EQUIPMENT CO. v. HERTZ CORP. AND CONTRACTORS, INC. v. HERTZ CORP.

v. Runnels, 249 N.C. 1, 105 S.E. 2d 108; Blevins v. France, 244 N.C. 334, 93 S.E. 2d 549; Tyson v. Ford, 228 N.C. 778, 47 S. E. 2d 251. The fact that the court elsewhere in its charge on contributory negligence several times used the words "a proximate cause" cannot be held to have cured the repeated use of the words "the proximate cause," because under such circumstances the jury could not possibly have known which was correct.

Plaintiff alleges in his complaint that his truck after the collision "was almost immediately engulfed in a flame of burning gas." And then "the plaintiff Rodgers, as the truck was engulfed in flame and while he was endeavoring to prevent a catastrophic explosion of Propane gas, was severely and painfully burned." That does not strictly conform to his proof, which is that immediately after the collision there was fire under the meter box, and no fire at the rear of the truck. He has no allegation as to why he went to the rear of the truck. Whether this is a material variance between allegata and probata is a question not without difficulty. However, defendants on this appeal have not argued the question, and the variance has apparently not misled them. We do not deem it proper to nonsuit the case for variance sua sponte, particularly when defendants raise no question in respect to it. Doubtless, in the lower court the complaint will be amended to avoid a variance. As to variance see Strong's N. C. Index, Vol. 4, Trial, sec. 26, Nonsuit for Variance, for a clear statement of the applicable law.

For error in the charge defendants are entitled to a new trial, and it is so ordered.

New trial.

---

C. C. T. EQUIPMENT CO., A NORTH CAROLINA CORPORATION, V. THE HERTZ CORPORATION, A DELAWARE CORPORATION; IVEY'S INCORPORATED, A NORTH CAROLINA CORPORATION; J. B. IVEY'S AND CO., A NORTH CAROLINA CORPORATION, AND FRANK LOUIS FOSTER.

AND

DAVIE CONTRACTORS, INC., A NORTH CAROLINA CORPORATION, V. THE HERTZ CORPORATION, A DELAWARE CORPORATION; IVEY'S, INCORPORATED, A NORTH CAROLINA CORPORATION; J. B. IVEY'S AND COMPANY, A NORTH CAROLINA CORPORATION, AND FRANK LOUIS FOSTER.

(Filed 2 February, 1962.)

1. Highways § 1—

    The State Highway Commission is an administrative agency of the State to which the State has delegated the police power to establish, main-

tain, and improve the State and county highways, and the Commission has the powers specifically delegated and such powers as are reasonably necessary for the effective discharge of such duties. G.S. 136-1, G.S. 136-18(1).

**2. Highways § 7—**

While the Highway Commission may not prescribe for its contractor a different standard of care than that imposed by the common law in regard to the traveling public, the Commission does have the power, in the construction of an overpass, to authorize its contractor to place a dirt ramp across the highway for the protection of the highway from heavy equipment hauling dirt for the overpass, and to authorize its contractor to place warning signs along the highway and to station flagmen at the ramp to stop traffic along the highway and close that portion when in use by earth moving equipment. G.S. 136-26.

**3. Automobiles § 52;     Trial § 19—**

Where the evidence discloses that the agent of one defendant was driving its truck for the transportation of its goods to another defendant, the mere fact that such other defendant was the intended recipient of the goods is insufficient to be submitted to the jury upon such other defendant's liability for the driver's negligence under the doctrine of *respondeat superior*, and such other defendant's motion to nonsuit must be sustained on appeal notwithstanding that the motion to nonsuit was not prosecuted on the ground of the insufficiency of the evidence of agency.

**4. Appeal and Error § 35—**

The Supreme Court is bound by the record and may not indulge in speculation as to matters or stipulations *dehors* the record.

**5. Automobiles § 7—**

A red flag properly displayed during the daylight hours is a recognized method of giving warning of danger to travelers along a highway.

**6. Highways § 7—     Evidence held for jury on question of negligence of motorist in failing to stop in obedience to signals at point where highway under construction was closed.**

Plaintiff's evidence tending to show that defendant-driver in approaching a dirt ramp placed across a highway incident to the construction of an overpass, was confronted by a series of signs warning that the road was under construction, that at the ramp a flagman was waving a red flag to stop traffic along the highway, and that defendant-driver failed to stop and was hit by an earth mover entering the highway down a cut in a 75 foot bank, resulting in damage to the earth mover and temporary loss of its use, *is held* sufficient to be submitted to the jury on the issue of defendant-driver's negligence, but, upon defendants' evidence in conflict on material aspects, does not show contributory negligence as a matter of law on the part of defendant-driver.

**7. Same—**

In an action to recover damages to an earth mover resulting from a collision between it and a vehicle on a highway under construction, upon evidence tending to show that the highway was temporarily closed to

EQUIPMENT CO. *v.* HERTZ CORP. AND CONTRACTORS, INC. *v.* HERTZ CORP.

traffic by a flagman waving a red flag, G.S. 136-26 authorizing the Highway Commission and its appropriate employees to close a highway under construction is relevant and properly admitted in evidence.

**8. Evidence § 24—**

A statute which is relevant to the action may be read in evidence from the printed statute book, G.S. 8-1.

**9. Highways § 7—**

Where, by the display of proper signals, a highway had been temporarily closed to the traveling public incident to highway construction, G.S. 20-156(a) has no application to earth moving equipment entering and crossing the highway in the progress of the work.

**10. Trial § 33—**

"Public highways" and "private driveways" are non-technical terms which the court is not required to define in the absence of specific request for instructions.

**11. Highways § 7—  Drivers of contractor's equipment remain under duty to exercise due care for safety of motorists even though highway has been temporarily closed.**

Notwithstanding that a contractor's road building equipment has the right-of-way in entering and crossing a highway under construction when the highway has been temporarily closed to traffic by a flagman, the operator of such equipment is not entitled to rely entirely upon the acts of the flagman but must stop to avoid collision with a vehicle whose driver negligently disregards the flagman's signal and continues along the highway if the operator of the equipment, in the exercise of a proper lookout, sees or should see the vehicle in time to avoid collision, and the admission of testimony of a supervisor to the effect that the operator of the equipment had no duty to stop for anything on the road at any time, is error.

**11. Trial § 15—**

A party does not lose his exception to the admission of testimony by failing to renew objection to a question when it is rephrased.

APPEAL by defendants from *Crissman, J.,* July 31, 1961 Mixed Term of DAVIE.

These are civil actions in which plaintiffs seek to recover damages allegedly caused by the actionable negligence of defendants.

C. C. T. Equipment Co. and Davie Contractors, Inc. (herein called Contractor), are North Carolina corporations with principal offices at Mocksville, N. C. The same persons own all of the stock of both corporations. Contractor is engaged in highway construction and leases equipment and machinery from Equipment Co. For the purposes of these suits the agents and employees of Contractor are also the agents and employees of Equipment Co. It was so stipulated.

On 22 September 1958 Contractor, pursuant to a subcontract with

the prime contractor, was engaged in grading operations for the North Carolina Highway Commission in connection with the construction of Interstate Highway 40, at a point 4 miles south of Marion, N. C., where the right-of-way of Interstate 40 crosses North Carolina Highway 26. At this point Highway 26 runs north and south. Contractor was moving dirt from west to east across Highway 26 in large earth movers. It had placed a ramp of dirt, about 14 inches deep and 14 to 20 feet wide, across the hardsurfaced portion of Highway 26, and the earth movers crossed the highway on this ramp to protect the highway surface. On the west side of Highway 26 at this point was a high bank covered with bushes and trees. The earth movers loaded west of the bank, came over the bank and down a cut and onto and across the ramp, and unloaded at places east of the highway. Two flagmen were stationed at the ramp to stop traffic on the highway when the earth movers were crossing; one flagman was on the south side of the ramp facing northbound traffic, the other was on the north side facing southbound traffic. The approach to the dirt ramp from the north along Highway 26 is downhill and straight for about 800 feet. Along this approach were warning signs located at the distances from the dirt ramp, and containing words and figures, as follows: 800 feet, "Road Work, Heavy Equip. 20 M. P. H."; 450 feet, "Danger, Road under Construction"; 150 feet, "Road Work, 25."

Ivey's Incorporated and J. B. Ivey's and Co. are North Carolina corporations with their principal offices at Asheville and Charlotte, respectively. On 22 September 1958 Frank Louis Foster was driving a Chevrolet truck, which had been leased from The Hertz Corporation, and was conveying goods from the place of business of Ivey's Incorporated in Asheville to the store of J. B. Ivey's and Co. in Charlotte. About 9:45 A.M., while going southwardly and crossing the aforesaid dirt ramp, the truck was struck on its right side by a loaded earth mover which was proceeding eastwardly across the ramp. Both vehicles were damaged.

Equipment Co. and Contractor sue in separate actions, the former for damage to the earth mover, the latter for loss of its use. Hertz, Ivey's Incorporated, J. B. Ivey's and Co., and Foster are sued jointly in each action.

Plaintiffs allege that defendants were negligent in that Foster at the time of and immediately preceding the collision (1) was violating provisions of the reckless driving statute (G.S. 20-140), (2) was driving at a speed greater than was reasonable and prudent under the circumstances, (3) failed to keep the truck under reasonable control, (4) failed to heed and obey warning signs and signals, (5) failed to decrease speed, (6) failed to keep a proper lookout, and (7) failed to yield the right-of-way.

Hertz's demurrer to the complaint was sustained, and the action was dismissed as to it. There was no appeal from this ruling.

The other defendants, answering, deny plaintiffs' allegations of negligence and allege specific acts and omissions on the part of the employees of plaintiffs as contributory negligence.

The two actions were consolidated for trial. Plaintiffs and defendants offered evidence. Their respective versions of the occurrence are in direct conflict.

Plaintiffs' version: In the center of the highway and near the ramp was a sign, facing north, worded "Obey Flagman." As the truck came down the hill it looked like it was not slowing down. The flagman who was facing north was standing at the center of the highway holding the red flag straight out to his left. He then began to wave the flag over his head from side to side crosswise the road. When the truck was within about ten feet of him, he jumped away. In the meantime the other flagman observed the approach of the truck, and ran onto the ramp and waved his red flag over his head in an effort to stop the truck. The truck ran onto the ramp where it was struck by the earth mover. The driver of the earth mover was about half way down the bank (it is 75 feet from the top of the bank to the highway) when he first saw the truck. The flagman was waving, but the truck did not stop. Brakes were applied to the earth mover but it was too late to avoid collision.

Defendants' version: The truck approached the ramp at 15 to 20 miles per hour. The driver saw the warning signs. The flagman was standing at the center line of the highway motioning to the truck, waving the flag north and south parallel to the highway, not crosswise. He was waving the truck through. He stepped aside. There was heavy equipment in the open space east of the highway, but none near the ramp. Foster put the truck in second gear and drove onto the ramp and was struck. He did not see the approach of the earth mover. It had been traveling in a deep cut in the bank obscured by bushes and trees.

The jury answered the issues as to negligence and contributory negligence in favor of plaintiffs and awarded damages to both.

Judgment was entered in accordance with the verdict.

Defendants appeal.

*Martin and Martin for plaintiffs.*
*Deal, Hutchins and Minor for defendants.*

MOORE, J. Defendants make a general contention which underlies all of their assignments of error. They insist that neither the State

Highway Commission nor the contractor had power and authority under conditions disclosed by this record to supervise and control the use of Highway 26 by the traveling public so as to give to the contractor's equipment and machinery a dominant status, and that in the use of the highway, as between the contractor and the traveling public, the ordinary rules of the road obtained as if no construction work affecting the highway was being done. It is therefore essential that we first review generally the principles of law relevant and applicable to facts and circumstances such as those existing here.

"The establishment of highways is embraced within the police power of the state and is a matter which is primarily under the jurisdiction and control of the legislature. Such power may be exercised by the state directly or delegated to municipalities and other subordinate agencies. . . ." 25 Am. Jur., Highways, s. 19, p. 350. "The improvement, maintenance and care of highways are matters under the control of the state in its sovereign capacity, as represented by the legislature, and it is the state's duty to provide for their construction and maintenance. . . . Subject to constitutional limitations, the state has full power to construct and maintain highways, or to provide for their construction and maintenance, to choose the means and methods it will employ to accomplish these purposes, and to control the work necessary to their accomplishment, whatsoever the agency employed in carrying out such work." *ibid*, s. 55, pp. 369, 370.

In North Carolina the Legislature has created a State Highway Commission. G.S. 136-1. It is a state agency or instrumentality, and as such exercises various governmental functions, including that of supervising the construction and maintenance of state and county public roads. *Moore v. Clark*, 235 N.C. 364, 70 S.E. 2d 182. "The general purpose of the laws creating the State Highway Commission is that said Commission shall take over, establish, construct, and maintain a state-wide system of hard-surfaced and other dependable highways. . . ." G.S. 136-45. The Commission is given "general supervision over all matters relating to the construction of the State highway. . . ." G.S. 136-18(1). The Commission is the state agency created for the purpose of constructing and maintaining our highways. All other powers it possesses are incidental to the purpose for which it was created. *DeBruhl v. Highway Commission*, 245 N.C. 139, 95 S.E. 2d 553.

The Legislature has not set out in detail every incidental power belonging to and which may be exercised by the Commission. As a practical matter the Legislature could not foresee all the problems incidental to the effective carrying out of the duties and responsibilities of the Commission. Of necessity it provided for those matters in general terms. Where a course of action is reasonably necessary for the

effective prosecution of the Commission's obligation to supervise the construction, repair and maintenance of public highways, the power to take such action must be implied from the general authority given and the duty imposed. *Mosteller v. R. R.*, 220 N.C. 275, 280, 17 S.E. 2d 133. "Administrative boards, commissions and officers have no common-law powers. Their powers are limited by the statutes creating them to those conferred expressly or by necessary or fair implication. . . . In determining whether a board or commission has a certain power, the authority given should be liberally construed in the light of the purposes for which it was created and that which is incidentally necessary to a full exposition of the legislative intent should be upheld as being germane to the law. In the construction of a grant of power, it is a general principle of law that where the end is required the appropriate means are given. . . . However, powers should not be extended by implication beyond what may be necessary for their just and reasonable execution." 42 Am. Jur., Public Administrative Law, s. 26, pp. 316-318.

The power and authority of the Commission to provide for and supervise the construction of Interstate Highway 40, to have it cross over other highways, to acquire and grade a right-of-way for that purpose, and to control and supervise the prosecution of the work, cannot be questioned. But defendants contend that the Commission, with respect to the use of Highway 26 by the contractor in the prosecution of grading work, was without authority to bring into play any duties and responsibilities, as between the contractor and the traveling public, other than those which obtained in the normal use of the highway.

It is true that the Commission cannot by contract or by supervisory instructions prescribe for contractors a different standard of care from that imposed by the common law in a given situation, as it affects third parties. *Pinnix v. Toomey*, 242 N.C. 358, 363, 365, 87 S.E. 2d 893. But in its use of and authority over a highway, for purposes of construction, repair or maintenance, it may create circumstances which bring into play rules of conduct which would not apply if such purposes were not involved.

G.S. 136-26 provides: "If it shall appear necessary to the State Highway Commission, its officers, or appropriate employees, to close any road or highway coming under its jurisdiction so as to permit proper completion of work which is being performed, such commission, its officers or employees, may close, or cause to be closed, the whole or any portion of such road or highway deemed necessary to be excluded from public travel. While any such road or highway, or portion thereof, is so closed, or while such road or highway, or portion thereof, is

in process of construction or maintenance, such commission, its officers or appropriate employees, or its contractor, under authority from such commission, may erect, or cause to be erected, suitable barriers or obstruction thereon; may post, or cause to be posted, conspicious notices to the effect that the road or highway, or portion thereof, is closed; and may place warning signs, lights and lanterns on such road or highway, or portions thereof." This statute, together with the general powers of the Commission already discussed, authorized the Commission directly or by implication, in the prosecution of the grading work in question, to direct and permit soil to be conveyed across Highway 26, the dirt ramp to be placed on the highway for its protection from injury by heavy equipment, the placing of warning signs along Highway 26, the stationing of flagmen at the ramp to stop traffic along Highway 26 and close that portion of the road when in use by earth movers, and its grade inspector to give supervision and instruction to the contractor and its employees in carrying out the grading work.

"Public travel on a street or other highway may be temporarily suspended for a necessary or proper purpose, as for example . . . to permit repairs or reconstruction." 25 Am. Jur., Highways, s. 116, p. 414. "The contractor doing the work . . . is there for a lawful purpose and is not obliged to stop the work . . . every time a traveller drives along. But while the traveller . . . assumes certain risks, he is still a traveller on a public way, and the contractor still owes him due care, and is liable for injuries suffered by him as a result of negligence in the performance of the work." *ibid,* s. 400, p. 698.

When a contractor undertakes to perform work under contract with the State Highway Commission, the positive legal duty devolves on him to exercise ordinary care for the safety of the general public traveling over the road on which he is working. *Council v. Dickerson's, Inc.,* 233 N.C. 472, 475, 64 S.E. 2d 551; *White v. Dickerson, Inc.,* 248 N.C. 723, 105 S.E. 2d 51. Contractors must exercise ordinary care in providing and maintaining reasonable warnings and safeguards against conditions existent at the time and place. *Gold v. Kiker,* 216 N.C. 511, 5 S.E. 2d 548; *Hughes v. Lassiter,* 193 N.C. 651, 137 S.E. 806. "Actual notice of every special obstruction or defect in a . . . highway is not required to be given to a traveler nor need the way be so barricaded as to preclude all possibility of injury, but it is sufficient if a plain warning of danger is given, and the traveler has notice or knowledge of facts sufficient to put him on inquiry. The test of the sufficiency of the warning . . . is whether the means employed, whatever they may be, are reasonably sufficient for the purpose." 25 Am. Jur., Highways, s. 413, p. 708. When a highway is under construction or repair, to the knowledge of a traveler, he may not assume that it is in safe condition. *Presley v. Allen & Co.,* 234 N.C. 181, 66 S.E. 2d 789.

One who operates an automobile on a public highway which is under construction or repair, or in use for such purposes, cannot assume that there are no obstructions, defects or dangers ahead. In such instances it is the duty of the motorist, in the exercise of due care, to keep his vehicle under such control that it can be stopped within the distance within which a proper barrier or obstruction, or an obvious danger, can be seen. *Chesson v. Teer Co.*, 236 N.C. 203, 72 S.E. 2d 407. When extraordinary conditions exist on a highway by reason of construction or repair operations, the motorist is required by law to take notice of them. The traveler's care must be commensurate with the obvious danger. *Kellogg v. Thomas*, 244 N.C. 722, 94 S.E. 2d 903.

In the light of the foregoing principles we now consider the assignments of error.

(1) Defendants assign as error the refusal of the court to grant their motions for nonsuit.

It is our opinion that the motion of J. B. Ivey's and Co. should have been allowed. There is no showing in the record, by way of admission, stipulation, evidence or otherwise, that the Chevrolet truck was leased by or under the control of J. B. Ivey's and Co., or that the driver, Foster, was in the employ or about the business of that company. It affirmatively appears that the truck was leased by Ivey's Incorporated of Asheville, Foster was an employee of Ivey's Incorporated and his mission was to deliver goods to J. B. Ivey's and Co., at Charlotte. The mere fact that Foster was on his way to Charlotte for the purpose of delivering goods to J. B. Ivey's and Co., nothing else appearing, is not a *prima facie* showing that he was its agent. It is true that no issue of agency was submitted to the jury, and the agency question is not raised in the brief. But motion for nonsuit is directed to the sufficiency of the evidence. We are bound by the record. Perhaps there was an understanding or stipulation *dehors* the record. But we may not indulge in speculation. On this record J. B. Ivey's and Co. is entitled to dismissal.

As to Ivey's Incorporated and Foster the motion was properly overruled. The facts heretofore summarized, when taken in the light most favorable to plaintiffs, are sufficient to justify the conclusion that the collision was proximately caused by Foster's disregard of warnings and signals, his failure to stop at the ramp and yield the right-of-way to the earth mover, and other acts and omissions by him involving speed, lookout and control, amounting to negligence as alleged. We have said that a red light is recognized by common usage as a method of giving warning of danger during hours of darkness, and a driver seeing a red light ahead in the highway is required in the exercise of due care to heed its warning. *Weavil v. Trading Post*, 245 N.C. 106, 95 S.E. 2d

533. The same is equally true of a red flag in daylight hours when properly displayed. For example, see G.S. 20-117.1(h). In the instant case contributory negligence does not appear as a matter of law. It is for the jury.

(2) G.S. 136-26 was admitted in evidence, over defendants' objection, and read to the jury.

If relevant, it was admissible. "All statutes . . . passed by the General Assembly may be read in evidence from the printed statute books. . . ." G.S. 8-1.

We think it is relevant. The pertinent part is quoted above: it deals with the closing of highways and posting of warnings. It tends to show, in part at least, as already indicated, the authority under which the conditions were created which gave rise to the respective duties and responsibilities of the parties in these cases, the legal permissibility of which conditions was seriously challenged by defendants. It is not only relevant but essential to plaintiffs' causes of action.

(3) Defendants contend that the court erred in failing to charge on applicable statutory definitions, G.S. 20-38(cc) and G.S. 20-38(w), and in failing to apply G.S. 20-156(a) to the facts in these cases.

G.S. 20-156(a) provides: "The driver of a vehicle entering a public highway from a private road or drive shall yield the right-of-way to all vehicles approaching on such public highway." In order to comply with this statute, a driver entering a public highway from a private drive is required to look for vehicles approaching on such highway, to look at a time when the precaution may be effective, to yield the right-of-way to vehicles traveling on the highway, and to defer entry until the movement may be made in safety. *Gantt v. Hobson,* 240 N.C. 426, 82 S.E. 2d 384; *Garner v. Pittman,* 237 N.C. 328, 75 S.E. 2d 111.

Under the conditions and circumstances here presented G.S. 20-156(a) is applicable at such times as the ramp is open for public travel, but it does not apply at such times as the ramp is closed by the flagmen. At the times when the ramp is closed public travelers have no right to use it, but must stop and yield the right-of-way to contractor's machinery. The flagmen's signal to stop is at least equivalent to a legally established stop sign or stop light at an intersection. Defendants' contention that G.S. 20-156(a) applies at all times and under all circumstances is rejected.

The situation here presented graphically illustrates the reason for and wisdom of the control and supervision given the Highway Commission relative to the use of highways while under construction or repair or while affected by such operations. The closing or temporary closing of highways or portions thereof during construction and repair

operations is designed to avoid interruptions and delays in the prosecution of the work. If the earth movers in the instant cases were required to stop and yield the right-of-way to travelers on the highway, the expense of construction and the time required to complete the project would be greatly increased. The rental rate of the earth mover involved in the collision was $315.00 per day. The cost to the State was much more. It is unreasonable to suppose that the Commission does not have, at least by implication of law, such control of the highways under the circumstances herein as to prevent such machinery from standing idly by the road while travelers pass at will.

We, of course, are not to be understood as holding that the operators of earth movers or other machinery under such circumstances are under no duty of care. Notwithstanding their favored status when the road is temporarily closed, they are required to use due care, and must keep a proper lookout and keep their vehicles under reasonable control. If a motorist disregards a flagman's signal and negligently enters the closed area, the operator of the contractor's machinery must stop and avoid collision, if in the exercise of reasonable care he can do so.

The court did not err in failing to give statutory definitions of "public highway" and "private driveway", G.S. 20-38(w) and G.S. 20-38(cc). There were no specific requests for such instructions. Moreover, these are non-technical terms and are commonly understood.

(4) The grade inspector for the Highway Commission was called as a witness for plaintiffs, and testified on direct examination that he gave instructions for placing warning signs, for stationing flagmen, and for moving equipment back and forth across the highway.

Then the following transpired:

"Q. In what fashion did you authorize them to move it?

"MR. MINOR: Objection, if the Court pleases. I don't know what the answer would be but I presume any vehicular traffic is governed by the laws of the State of North Carolina, not by any authority of the inspector on the job."

Objection overruled. Exception for defendants.

"Q. In what fashion did you authorize them to move these dirt-moving machines across the highway there from west to east?

"A. Well, with the supervision of the flagmen, they could go and come at their own free will, without stopping or anything at the road. The flagmen were supposed to stop traffic for the vehicles, stop the vehicular traffic."

"MR. MINOR: Objection — overruled."

In failing to strike the answer and instruct the jury to disregard it,

the court fell into error. The inspector, acting on behalf of the State Highway Commission, had authority to instruct and supervise the contractor and his employees in the prosecution of the work, but he had no authority to prescribe a different standard of care for the equipment operators from that imposed by rule of common law. *Pinnix v. Toomey, supra.* From this testimony the jury may well have understood that the machinery operators were relieved of all duty of care, and could rely entirely on the actions of the flagmen. But, as already indicated, they are charged with the duty of exercising reasonable care under the circumstances in which they are placed.

Plaintiffs contend that defendants failed to preserve the exception in that they did not object when the question was rephrased. This contention is not sustained. See *Jamerson v. Logan,* 228 N.C. 540, 543, 46 S.E. 2d 561.

As to defendant, J. B. Ivey's and Co., the judgment below is

Reversed.

As to defendants, Ivey's Incorporated and Frank Louis Foster, there will be a

New trial.