T. C. DOWLESS, T/A T. C. DOWLESS TRANSFER COMPANY
v. C. C. MANGUM, INC.

No. 7110DC245

(Filed 18 August 1971)

**Highways and Cartways § 7— highway construction contractor — failure to maintain suitable detour**

Plaintiff's evidence was sufficient to require submission of the case to the jury as to whether defendant contractor was negligent in violating G.S. 136-25 by failing to maintain a suitable detour around highway construction work, where it tended to show that defendant's flagman directed the driver of plaintiff's tractor-trailer to proceed, that it was necessary for plaintiff's driver to drive on the shoulder of the road to get around equipment that was blocking the road, and that the shoulder gave way and plaintiff's vehicle rolled down an embankment.

Judge HEDRICK dissenting.

APPEAL by plaintiff from *Winborne, District Judge,* 30 November 1970 Session of WAKE County District Court.

At the close of the plaintiff's evidence, the court allowed the defendant's motion for a directed verdict and dismissed the plaintiff's cause of action with prejudice. The plaintiff excepted and appealed to the Court of Appeals.

*Holleman & Savage by Carl P. Holleman for plaintiff appellant.*

*Young, Moore & Henderson by J. C. Moore for defendant appellee.*

MALLARD, Chief Judge.

The parties stipulated as follows:

"1. That the amount plaintiff is entitled to recover, if he is entitled to recover anything, is $3,000.00, and that if issues are submitted to the jury and if the jury reaches the issue of damages, they might be instructed to answer that issue in the amount of $3,000.00.

2. That at the time of and at the place of the accident out of which this action arises, Frank Brown, Jr. was operating plaintiff's tractor-trailer unit as plaintiff's agent, servant, and employee and was so acting in the course and

scope of his employment by the plaintiff and that any negligence on the part of Frank Brown, Jr. is imputed as a matter of law to the plaintiff."

The defendant admitted in its answer that on 15 September 1966 at approximately 2:15 p.m., it was performing roadwork on N. C. Highway 55 under contract with the North Carolina Highway Commission, that its equipment was being operated by its employees, and that the flagman stationed there directing traffic was its employee. It was also admitted that the plaintiff's tractor-trailer unit was being operated on Highway 55 in an easterly direction, and as it approached defendant's flagman, plaintiff's driver "saw the flagman and defendant's equipment lawfully blocking said eastbound lane and heeding the signs given plaintiff's said driver by defendant's flagman to proceed east in the westbound lane, proceeded to do so."

The plaintiff offered as evidence the testimony of Frank Brown, Jr., its driver, who testified:

" * * * As I was coming into Apex, I came down a hill around a curve and at the bottom of the hill there was a flagman, and he had one of these signs, a round sign on a stick that had 'STOP' on one side and 'GO' on the other. He had 'STOP' on it, so I almost came to a complete stop, and he turned it to 'GO', and he had a red flag in his left hand, and he motioned me to go around. So, I went around him there were three pieces of machinery about half way up the next hill. So, I ran on the highway until I was within two or three hundred feet of them, and I had to get off. From where I was sitting it looked like something across the white line, and it looked like a scraper blade. So, I pulled off on the left-hand side, off on the dirt to get around him. There was three men standing on the inside of the white line back of the machinery. I will say two or three men, talking. So I pulled off on the shoulder of the road to go around him, and I was in the lowest gear I could get on my truck. I was going uphill, and all of a sudden, I felt my pulling wheels—that's what you call the wheels in the back of the tractor—I felt one of them, and the truck came to a complete stop, then it started sliding. So, I rode it down. Then, after it stopped, I kicked the windshield out and crawled out, and I don't know how long it was, it was a few minutes, one of the men came running down

and asked me if there was anyone else in the truck. I told him 'No, it was nobody but me.' I crawled back in and switched the truck off and crawled back out and went up the hill and sat down. The tractor and trailer landed upside down. The embankment looked like fresh dirt that had just been moved there. I don't know how high the embankment was, maybe I went down twenty feet, but I wasn't at the bottom of it then. The truck turned one complete time. A flagman at the bottom of the hill directed me around. I had practically stopped because he had his stop sign on. I didn't go around until he took his red flag and directed me around. I was in the right lane and he directed me into the left lane. I stayed in the left lane until I got within two or three hundred feet of the machinery. Then I had to get off on the shoulder of the road. Then I ran off—from where I was sitting it looked like a scraper blade extending across the lane so I got off on the shoulder of the road. I received no direction from any of the men after I saw the scraper blade. When I started around the end of the machine I was going between 10 and 15. I was down to the lowest gear I could get in my truck. I just let my truck ease off on the shoulder of the road. I didn't cut it fast or anything. The shoulder of the road was just like any ordinary shoulder. I was following the directions of the flagman when I was going around the machinery and the men. I didn't have but one direction to go in to get around them because the machinery was sitting on the hard surface on the right. I crossed over the white line to the left to get around. I don't know how wide the surface is on the highway. * * * "

Defendant's flagman directed plaintiff's driver to proceed. In order to do so, it was necessary for plaintiff's driver to drive on the shoulder of the highway. The shoulder gave way and caused plaintiff's vehicle to be damaged as it rolled down the embankment. When defendant's flagman motioned plaintiff's driver to proceed, he had the right to assume, nothing else appearing, that the defendant had complied with the provisions of G.S. 136-25, which requires, among other things, a contractor employed by the Highway Commission "to select, lay out, maintain and keep in as good repair as possible suitable detours by the most practical route while said highways or roads are being improved or constructed * * * ." We hold that the evidence was sufficient to require submission of the case to the jury as to

---

Dowless v. Mangum, Inc.

---

whether defendant was employed by the Highway Commission and failed to comply with the statute. *Equipment Co. v. Hertz Corp.* and *Contractors, Inc. v. Hertz, Corp.*, 256 N.C. 277, 123 S.E. 2d 802 (1962); *Presley v. Allen & Co.*, 234 N.C. 181, 66 S.E. 2d 789 (1951). The evidence does not disclose that plaintiff's driver was contributorily negligent as a matter of law. The trial judge erred in allowing defendant's motion for a directed verdict.

Reversed.

Judge CAMPBELL concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

The evidence reveals that the defendant's equipment and men were blocking the south side of the highway 500 to 600 feet beyond the point where defendant's flagman directed plaintiff's driver to proceed on the pavement on the left side of the road. Following the instructions of the flagman, plaintiff's driver drove the truck along the left side of the highway to within 200 to 300 feet of the equipment where he *first* observed the "scraper blade" extending across the white line into the left side of the highway. The driver testified: "When I was about two hundred feet from the equipment I determined I didn't have enough room to get by it without going on the shoulder, so I turned off onto the shoulder."

In my opinion, the evidence does not raise an inference that defendant's flagman directed plaintiff's driver to drive the truck off the pavement upon the shoulder of the road. There is no evidence from which the jury could find that the defendant selected, laid out or maintained the shoulder of the highway as a detour around defendant's equipment and men.

Although the evidence may be sufficient to raise an inference that the defendant failed to obey the mandate of the statute by selecting and laying out a suitable detour around the "scraper blade" blocking a portion of the lane of the highway upon which the plaintiff's driver was directed to proceed, it seems clear to me that this breach was not a proximate cause of the accident.

In my opinion, the evidence of actionable negligence upon the part of the defendant is not sufficient to carry the case to the jury.

I vote to affirm the judgment allowing defendant's motion for a directed verdict.