L'TANYA D. DAVIS, EXECUTRIX OF ESTATE OF KENNETH A. DAVIS, PLAINTIFF v. J.M.X., INCORPORATED, AND ESAU ROOSEVELT DIXON, DEFENDANTS-APPELLANTS v. ANTOINETTE PADILLA TOLER, REA CONSTRUCTION COMPANY, PROTECTION SERVICES, INC., AND STATE OF NORTH CAROLINA, *EX REL* NCDOT, THIRD-PARTY DEFENDANTS-APPELLEES AND L'TANYA DURANTE DAVIS, PLAINTIFF v. J.M.X., INCORPORATED, AND ESAU ROOSEVELT DIXON, DEFENDANTS-APPELLANTS v. ANTOINETTE PADILLA TOLER, REA CONSTRUCTION COMPANY, PROTECTION SERVICES, INC., AND STATE OF NORTH CAROLINA, *EX REL* NCDOT, THIRD-PARTY DEFENDANTS-APPELLEES AND E. ANN CHRISTIAN, AS GUARDIAN AD LITEM FOR LEONARD AARON DAVIS, II, PLAINTIFF v. J.M.X., INCORPORATED, AND ESAU ROOSEVELT DIXON, DEFENDANTS-APPELLANTS v. ANTOINETTE PADILLA TOLER, REA CONSTRUCTION COMPANY, PROTECTION SERVICES, INC., AND STATE OF NORTH CAROLINA, *EX REL* NCDOT, THIRD-PARTY DEFENDANTS-APPELLEES AND ROBERTA E. JOHNSON, AS ADMINISTRATRIX OF THE ESTATE OF THELMA P. BITTING, PLAINTIFF v. J.M.X., INCORPORATED, AND ESAU ROOSEVELT DIXON, DEFENDANTS-APPELLANTS v. ANTOINETTE PADILLA TOLER, REA CONSTRUCTION COMPANY, PROTECTION SERVICES, INC., AND STATE OF NORTH CAROLINA, *EX REL* NCDOT, THIRD-PARTY DEFENDANTS-APPELLEES

No. COA99-332

(Filed 4 April 2000)

## 1. Highways and Streets— construction—warning signs—negligence—contractors

The trial court did not err by granting summary judgment for third-party defendants Rea and P.S.I. in a action arising from a collision in a work zone where Rea was a contractor of NCDOT, P.S.I. was a subcontractor of Rea, and the third-party plaintiff alleged negligence in failing to attach a 45 m.p.h. speed advisory sign to the "left lane closed ahead" sign. There was testimony that it was NCDOT's duty to create a traffic control plan and that P.S.I.

only furnished the materials and erected the signs as NCDOT directed; if the signs were not erected as specified by NCDOT, neither Rea nor P.S.I. would be compensated. There was also evidence that NCDOT marked the roadway indicating which signs were to be erected and where, that an NCDOT inspector was present when P.S.I. erected the signs, and that NCDOT inspected the signs almost daily. The only duty of Rea and P.S.I. was to exercise ordinary care in providing and maintaining reasonable warnings.

**2. Highways and Streets— construction—warning signs—negligence—NCDOT**

The trial court erroneously granted summary judgment for third-party defendant NCDOT in an action arising from a truck rear-ending a van in a construction zone where the third-party plaintiff alleged negligence in the placement of a warning sign and there was evidence that the truck driver would have slowed had he seen the sign and that the signage contributed to the accident. Genuine issues of fact existed as to whether NCDOT breached its duty and whether the signage was a proximate cause of the accident.

Judge WYNN dissenting.

Appeal by defendants and third-party plaintiffs Esau R. Dixon and J.M.X., Incorporated (hereinafter "third-party plaintiffs") from judgments filed 2 July 1998, 8 July 1998, and 9 July 1998, by Judge E. Lynn Johnson in Durham County Superior Court. Heard in the Court of Appeals 3 January 2000.

*McDaniel, Anderson & Stephenson, L.L.P., by William E. Anderson and John M. Kirby, for defendants-appellants J.M.X., Incorporated and Esau R. Dixon.*

*Yates, McLamb & Weyer, L.L.P., by Rodney E. Pettey, for third-party defendant-appellee Rea Construction Company; and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by James D. Blount, Jr. and Deanna L. Davis, for third-party defendant-appellee Protection Services, Inc.*

WALKER, Judge.

On 23 August 1996, a multi-vehicle accident occurred in a construction zone on I-85 North in Durham County, prior to the Glenn

**DAVIS v. J.M.X., INC.**

[137 N.C. App. 267 (2000)]

School Road overpass. Plaintiffs initiated four civil actions against third-party plaintiffs J.M.X., Incorporated (J.M.X.) and Esau Roosevelt Dixon (Dixon), alleging that Dixon, an employee of J.M.X., was negligent in operating a tractor trailer owned by J.M.X. Plaintiffs alleged that Dixon negligently drove the tractor trailer into the rear of a John Umstead Hospital van which was stopped in the right northbound lane, causing a chain reaction collision and that J.M.X. was liable under the doctrines of agency and *respondeat superior*. Third-party plaintiffs answered denying negligence and claimed that the accident was unavoidable since Antoinette Toler (Toler), the driver of the hospital van, negligently cut in front of the tractor trailer, leaving Dixon insufficient time to stop.

Third-party plaintiffs later filed third-party complaints against Toler, Rea Construction Company (Rea), Protection Services, Inc. (P.S.I.), and the State of North Carolina, *ex rel* NCDOT (NCDOT), alleging that Toler was negligent in operating the hospital van and that Rea, P.S.I., and NCDOT were negligent in constructing signage for the construction zone since they failed to attach a 45 m.p.h. speed advisory sign to the "left lane closed ahead" sign. Rea was a contractor of NCDOT for this construction project, and P.S.I. was a subcontractor of Rea. Third-party defendants Rea, P.S.I., and NCDOT moved for summary judgment, which was granted after a hearing. The trial court then granted third-party plaintiffs' motion pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, allowing them to immediately appeal the summary judgment orders.

Third-party plaintiffs assign as error the trial court's granting of summary judgment in favor of Rea, P.S.I., and NCDOT since genuine issues exist. "To recover damages for common law negligence, a plaintiff must establish (i) a legal duty, (ii) a breach thereof, and (iii) injury proximately caused by such breach." *Hunt v. N.C. Dept. of Labor*, 348 N.C. 192, 195, 499 S.E.2d 747, 749 (1998). Summary judgment is proper when there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999); *Coastal Leasing Corp. v. T-Bar S Corp.*, 128 N.C. App. 379, 496 S.E.2d 795 (1998). Defendant, as the moving party, bears the burden of showing that no triable issue exists. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-342 (1992). This burden can be met by showing: (1) that an essential element of plaintiff's claim is nonexistent; (2) that discovery indicates plaintiff cannot produce evidence to support an essential element; or (3) that plaintiff cannot surmount an affir-

DAVIS v. J.M.X., INC.

[137 N.C. App. 267 (2000)]

mative defense. *Id.* at 63, 414 S.E.2d at 342. Once a defendant has met that burden, the plaintiff must forecast evidence tending to show a *prima facie* case exists. *Id.* "However, it is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979). Thus, summary judgment is "rarely appropriate in negligence actions." *Bernick v. Jurden*, 306 N.C. 435, 450, 293 S.E.2d 405, 415 (1982).

**[1]** We first address the granting of summary judgment in favor of Rea and P.S.I. Third-party plaintiffs contend that contractors and subcontractors of NCDOT have a statutory duty to maintain the highways and to comply with the standards in the NCDOT manual. Third-party plaintiffs rely on N.C. Gen. Stat. § 136-25 which provides:

> It shall be mandatory upon the Department of Transportation, its officers and employees, or any contractor or subcontractor employed by the said Department of Transportation, to select, lay out, maintain and keep in as good repair as possible suitable detours by the most practical route while said highways or roads are being improved or constructed, . . . .

N.C. Gen. Stat. § 136-25 (1999). Rea and P.S.I. argue that a contractor is not required to guarantee the safety of the motoring public. *See Presley v. C.M. Allen & Co., Inc.*, 234 N.C. 181, 184, 66 S.E.2d 789, 791 (1951). Instead, a contractor's duty is simply to "exercise ordinary care in providing and maintaining reasonable warnings and safeguards against conditions existent at the time and place." *C.C.T. Equip. Co. v. Hertz Corp.*, 256 N.C. 277, 284, 123 S.E.2d 802, 808 (1962).

Third-party plaintiffs' expert witness, Don R. Moore, testified that it was NCDOT's duty to create a traffic control plan and that P.S.I. only furnished the materials and erected the signs as NCDOT directed. The evidence indicates that if the signs were not erected as specified by NCDOT, neither Rea nor P.S.I. would be compensated for its work. Here, there is also evidence that NCDOT marked the roadway indicating which signs were to be erected and where, and that a NCDOT inspector was present when P.S.I. erected the signs for this construction project. NCDOT then inspected the signs almost daily to ensure that they remained in conformity with NCDOT's standards. Since NCDOT had sole discretion in determining the signage for this

construction project, the only duty of Rea and P.S.I. was to exercise ordinary care in providing and maintaining reasonable warnings. Therefore, we conclude that no genuine issue exists as to whether Rea or P.S.I. breached their duty to defendants and that the trial court properly awarded summary judgment in their favor.

[2] We next address the granting of summary judgment in favor of NCDOT. Third-party plaintiffs argue that NCDOT is responsible for the "necessary planning, construction, maintenance, and operation of an integrated statewide transportation system" pursuant to N.C. Gen. Stat. § 143B-346 (1999) and that it breached its duty, proximately causing injury. Specifically, third-party plaintiffs contend that NCDOT violated N.C. Gen. Stat. § 136-30 by failing to conform with the NCDOT Manual Standard § 150.03 which requires that an advisory speed sign be attached to the post of a "left lane closed ahead" sign. Relying on an Ohio case, *Lumbermens Mutual Casualty Co. v. Ohio D.O.T.*, 49 Ohio App. 3d 129, 551 N.E.2d 215 (1988), third-party plaintiffs argue that NCDOT did not have discretion in this matter and was required to post a 45 m.p.h. advisory speed sign on the post with the "left lane closed ahead" sign. In *Lumbermens*, the Ohio court found the D.O.T. did not comply with its manual which states that a rough road sign, once installed, "shall" be accompanied by advisory speed signs. *Id.*

The record reveals the parties stipulated that the appeals from the present case and the companion case of *Green v. Dixon, et al*, (NO. COA99-131 filed 4 April 2000), would be consolidated for hearing pursuant to Rule 40 of the Rules of Appellate Procedure. Although NCDOT did not submit a brief for consideration in the present case, this Court, in its discretion, elects to consider the briefs filed by the third-party defendants in both cases. We note, however, that it is a better practice for the parties to file briefs in each case.

In their briefs, third-party defendants contend that the trial court properly granted summary judgment since there is no genuine issue of material fact. Third-party defendants argue that *Lumbermens* is distinguishable from the present case since the advisory speed sign was merely "relocated" within the construction zone rather than completely missing. NCDOT Manual Standard § 150.03 consists of a diagram which illustrates the signage that is to be used for the long term closure of one side of a four-lane divided roadway. There is, however, evidence in the record that the standards set forth in the NCDOT Manual are subject to the discretion of the NCDOT project engineer

and should be adjusted according to the particular field conditions. Furthermore, third-party plaintiffs have failed to cite any provisions in the NCDOT Manual which deprive the project engineer of discretion in this matter.

Third-party defendants further contend that there is no factual issue regarding proximate cause since all of the drivers involved in the accident had actual notice of the construction. Additionally, third-party defendants rely on the testimony of Moore, third-party plaintiffs' expert, who admitted that similar accidents occur in construction zones where the signage is proper, that the majority of drivers does not follow the first advisory speed limit sign encountered, and that the second advisory sign would have been past the section of I-85 where the accident occurred.

Third-party plaintiffs argue that the construction signage was a proximate cause of the accident and that Moore's testimony was sufficient to withstand the summary judgment motion. Moore averred in his affidavit that the "omission of the 45 MPH sign from the post with the LEFT LANE CLOSED AHEAD sign south of the bridge violated applicable safety standards" and that these violations "more likely than not contributed to the causation of the accident on August 23, 1996." Third-party plaintiff Dixon testified that if he had seen a 45 m.p.h. advisory speed limit sign before he reached the Glenn School Road overpass, he would have reduced his speed from 55 m.p.h. to 45 m.p.h. Furthermore, during his deposition, Moore testified that, in his opinion, "this signage did contribute to and was a causation of the accident, and the reason for that is because we have other vehicles that are merging." Moore stated that even if Dixon were not paying attention to the signs, the signage could have contributed to the accident due to the reactions of other drivers on the highway. Based on this testimony, we conclude that this case is distinguishable from *Lumbermens* and that third-party plaintiffs forecasted sufficient evidence tending to establish a *prima facie* case since genuine issues exist as to whether NCDOT breached its duty and whether the signage was a proximate cause of the accident.

In summary, we affirm the trial court's granting of summary judgment in favor of Rea and P.S.I., and we reverse the granting of summary judgment in favor of NCDOT.

Affirmed in part and reversed in part.

DAVIS v. J.M.X., INC.

[137 N.C. App. 267 (2000)]

Chief Judge EAGLES concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

I disagree with the majority's conclusion that no genuine issue exists as to whether Rea or P.S.I. breached a duty to the defendants. Instead, I would find that an issue of fact exists as to whether Rea and P.S.I. breached a duty to exercise ordinary care for the safety of the general public.

First, our case law indicates that a road contractor undertakes such a duty. In *C.C.T. Equip. Co. V. Hertz Corp.*, 256 N.C. 277, 284, 123 S.E.2d 802, 808 (1962), our Supreme Court established that when "a contractor undertakes to perform work under contract with the State Highway Commission, the positive legal duty devolves on him to exercise ordinary care for the safety of the general public traveling over the road on which he is working."

Second, our statutes mandate a duty on road contractors. Under N. C. Gen. Stat. § 136-25, "any contractor or subcontractor employed by [NCDOT]" has a duty "to select, lay out, maintain and keep in as good repair as possible suitable detours by the most practical route . . . ."

Finally, the testimonial evidence at trial pointed to such a duty. Employees of both Rea and P.S.I. testified that their businesses routinely adopted the safety standards set forth in the NCDOT Manual for Highway Signs. In doing so, they acknowledged that a certain duty of care existed towards those traveling the highways, and that they were aware of this duty.

Thus, existing case law, statutory law and testimonial evidence in this case shows that Rea and P.S.I. owed a duty to the general public to exercise ordinary care in the placement of highway signs for this project. The fact that they may have followed NCDOT's orders as to where to put the signs does not mean that they no longer had a duty to exercise ordinary care. Indeed, such evidence is only part of the proof that the jury would consider in determining whether the contractor and subcontractor breached their existing duty of care to the general public.