**GLASS CONTAINERS CORPORATION,**
**Plaintiff-Appellee, Cross Appellant,**

v.

**MILLER BREWING COMPANY, Defendant-Appellant, Cross Appellee.**

No. 79–3284.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 22, 1981.

---

**310**

Cantey, Hanger, Gooch, Munn & Collins, H. Carter Burdette, Estil Vance, Jr., Fort Worth, Tex., for defendant-appellant, cross appellee.

Thompson, Knight, Simmons & Bullion, Gregory S. C. Huffman, Christopher W. Byrd, Dallas, Tex., for plaintiff-appellee, cross appellant.

Before WISDOM, COLEMAN and RANDALL, Circuit Judges.

COLEMAN, Circuit Judge.

This is a lawsuit in which a bottle manufacturer and the manufacturer of a product sold in bottles fell out over their contract for the sale and purchase of bottles, with the result that a resolution of the controversy has fallen upon the Courts.

In October, 1974, the Miller Brewing Company (hereafter MBC) sent the Glass Container Corporation (hereafter GCC) its Purchase Order Number 71689, for 2,500,-000 cases of bottles, to be manufactured at GCC's Palestine, Texas plant for use at MBC's Fort Worth brewery. The order specified:

Flint bottles in 12 oz. and 7 oz. sizes at the discretion of the Miller Brewing Company.

The bottles were to be purchased during the calendar year 1976 but rather than asking

for all the bottles at once the purchase order stated:

DELIVERY: To be produced and released as required by the Ft. Worth purchasing department.

A year later, October, 1975, MBC sent GCC its Purchase Order Number 95670, reiterating the order of 2.5 million cases of bottles and making changes in prices and other terms not now in issue.

Prior to delivery of any of the 1976 bottles MBC sent GCC another purchase order, Number 95541, for 500,000 cases of 12 oz. bottles to be designated and paid for in November and December, 1975.

The purchase orders assigned to MBC's Fort Worth purchasing department the duty of specifying how many cases it wanted, the sizes, and the dates for delivery. In 1975 it ordered only 270,492 cases of the 500,000 it had asked for in the purchase order. In 1976 the shortfall was even greater. During the calender year 1976 disputes arose between MBC and GCC over the price and quality of the bottles. On October 26, 1976, MBC notified GCC that it should stop production of bottles for MBC but agreed to accept 330,000 bottles from GCC, representing its existing MBC inventory and one week of production. GCC contended this "inventory agreement" obligated MBC to accept the 330,000 bottles by the end of the 1976 calendar year.

Not until October, 1977, did MBC accept the 330,000 cases it had agreed to accept. Counting the inventory taken in 1977 along with MBC's actual purchases for 1976 MBC purchased 2,207, 274 cases of the 2,500,000 total it had agreed to purchase for 1976.

In October, 1977, GCC filed its diversity action against MBC, citing three breaches of contract and asking for damages for each. The alleged breaches were:

(1) failing to designate and buy the 500,-000 cases it had agreed to purchase for November and December, 1975;

(2) failing to designate and buy the 2,500,000 cases it agreed to purchase for 1977; and

(3) delaying until October, 1977, its purchase of the 330,000 cases of bottles it agreed to purchase by the end of 1976.

GCC sought loss of profits for the 1975 and 1976 shortfalls, and as incidental damages sought the warehousing costs it incurred when MBC failed to purchase the inventory by the end of 1976. It also sought its attorney's fees. MBC and GCC had stipulated, however, that if GCC was entitled to attorney's fees $30,000 was a fair award.

MBC's defense was a general denial of the validity of GCC's alleged contracts. MBC further alleged three affirmative defenses:

(1) That many of the bottles produced were not of adequate quality;

(2) That the price asked for by GCC was not competitive, as required by the contract, and

(3) That assuming MBC was liable on the 1975 and 1976 contracts the inventory agreement was an accord and satisfaction ending any of its liability to GCC.

In a pre-trial order dated March 27, 1979, MBC continued to assert its general denial and its three affirmative defenses. As it had been in the pleadings, MBC was as silent as the tomb as to the "7 oz. bottle" defense.

At trial MBC introduced into the record a number of bottle manufacturer inter-office communications which urged that greater efforts be taken to qualify a mold for the 7 oz. bottle. Some of these communications referred to requests for action coming from the buyer in MBC's *Milwaukee* office. MBC's Milwaukee buyer, Robert Brumm, testified in general terms that he had pushed GCC steadily to produce 7 oz. bottles.[1] MBC offered no evidence that its

*Fort Worth* purchaser, who had been designated to specify how many bottles it wanted, ever asked GCC to qualify a 7 oz. bottle or ever sought to purchase 7 oz. bottles from GCC. Brumm testified that MBC satisfied all its 7 oz. bottle needs from a bottle producer other than GCC.

At the close of the trial, when the time came to instruct the jury, MBC *for the first time* unveiled its 7 oz. bottle defense. It sought a defensive instruction that GCC's failure to qualify a 7 oz. bottle mold was a sufficient impairment of the contract to excuse MBC's failure to purchase the 2.5 million cases ordered for 1976. The District Court correctly refused this proposed instruction.

The jury found for GCC on all submitted counts. It found that GCC was capable of delivering 500,000 cases of acceptable quality bottles in 1975 and 2,500,000 cases of acceptable bottles in 1976. It found MBC to have been contractually obligated to take the remaining inventory before the end of the 1976 calendar year. It found that the inventory agreement was not an accord and satisfaction. It awarded GCC $94,534 in damages for the 1975 order shortfall and $127,570 for the 1976 order shortfall. Finally, it awarded GCC $33,288 for storage costs incurred when MBC failed to take the 330,000 case inventory by December 31, 1976. Total damages came to $255,392, plus interest.

Construing Article 2226 of the Texas Revised Civil Statutes the Court denied GCC's motion for attorney's fees and also rejected MBC's motion for a judgment n. o. v. or for a new trial. Both litigants appeal. We affirm the judgment of the District Court on the merits but reverse as to attorney's fees.

### The 7 oz. Bottle Defense

■ MBC argues that the Court erred in refusing the requested jury instructions re-

---

1. The record shows apparent communication gaps between MBC's Milwaukee and Fort Worth purchasing departments. In his testimony Robert Brumm, Milwaukee buyer for MBC, cited an approximate figure for the 1976 shortfall. Asked the source of this figure, he said it did not come from his personal knowledge, but rather he had heard another witness testify to that effect. Brumm admitted that after the Fort Worth purchasing department had told GCC it did not want any 8 oz. bottles from GCC he continued to exhort GCC to qualify a 7 oz. bottle.

lating to the 7 oz. bottle defense. Although the formulation of jury instructions is within the discretion of the District Court, it does have the obligation to instruct the jury on those controlling issues raised by the pleadings and evidence, *Duke v. Sun Oil Company*, 320 F.2d 853, 865 (5th Cir., 1963); Rule 51,[2] Federal Rules of Civil Procedure. We must decide whether the 7 oz. bottle defense was sufficiently raised either by the pleadings or the evidence.

■ As mentioned above, the 7 oz. bottle defense was not specifically pled nor was it mentioned in the pre-trial order. This omission is probably a waiver by MBC of its right to assert this defense late in trial, since we interpret the 7 oz. bottle defense as an affirmative defense, which according to Rule 8(c)[3] of the Federal Rules of Civil Procedure, must be pled or waived. We understand MBC to argue that even if the 1976 purchase order obligates MBC to purchase 2.5 million cases of bottles the purchase requirement was waived by GCC's failure to qualify a 7 oz. bottle mold thus failing to supply the desired 7 oz. bottles.

In response to a trial tactic similar to that apparently attempted here, this Court has stated "... a litigant cannot strategically lie behind the log until after the trial and receipt of evidence, argument, and charge to the jury before raising an issue not found in the pleadings nor included in the pre-trial order and then raise it when it is too late for his opponent to do anything about it. The manifest prejudice of such tactics would make a shambles of the efficacy of

pretrial orders and a fair trial," *Bettes v. Stonewall Insurance Company*, 480 F.2d 92, 94 (5th Cir., 1973). We hold that by not pleading it MBC waived the 7 oz. bottle defense, *Pan American Bank of Miami v. Oil Screw Denise*, 613 F.2d 599 (5th Cir., 1980).

MBC argues that even though it did not plead the 7 oz. bottle defense (1) it was argued by implied consent and (2) its general denial raised the issue.

■ In reviewing an assertion that an issue has been tried by implied consent, the record must be very carefully examined. Although the trial court has an obligation to instruct the jury on all controlling issues raised by the pleadings and the evidence it has no obligation "... to introduce issues inferentially suggested by incidental evidence in the record," *Browning Debenture Holders Committee v. DASA Corporation*, 560 F.2d 1078 (2d Cir., 1977).

■ GCC did not object when MBC introduced GCC inter-office communications on the attempted production of the 7 oz. bottles. However, when MBC sought to elicit information from witnesses from which the jury could have inferred that GCC waived its contractual right to have MBC buy a minimum number of bottles, GCC specifically objected that waiver had not been pled, and the objection was sustained. This negates MBC's assertion that the issue was tried by implied consent.

**2.** Rule 51 provides that:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**3.** Rule 8(c) provides that:

(c) *Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

 MBC's argument that its 7 oz. bottle defense was raised by its general denial is an attempt to confuse the pleading requirement of the Texas Rules of Civil Procedure with those of the Federal Rules of Civil Procedure.[4] Since the requirement to plead an affirmative defense is a procedural rule, it is governed in this diversity action by the Federal Rules. This MBC argument is clearly of no merit.

The refusal to instruct the jury on the 7 oz. bottle defense was no abuse of sound discretion.

### Challenged Jury Findings

MBC contends that the record does not establish either that GCC could have delivered (1) the 500,000 cases of 12 oz. bottles called for by the 1975 contract by December 31, 1975, or (2) the 330,000 cases of inventory in satisfactory condition by December 31, 1976.

MBC sent GCC Purchase Order Number 95541 October, 1975, asking for 500,000 cases of 12 oz. bottles to be ordered and paid for November and December, 1975. GCC returned MBC the acceptance copy of this order. MBC acknowledged receiving this acceptance copy. MBC's argument is that while it did not timely request the bottles it had agreed to buy, GCC would not have been able to produce them had there been a timely request.

In Question No. 1 the jury was asked:
How many of the 500,000 cases of bottles described in Purchase Order No. 95541 (Plaintiff's Exhibit 3) do you find from a preponderance of the evidence that GCC was able or would have been able to produce and deliver in acceptable quality by December 31, 1975?

The question asked for an answer in reference to cases. The jury's answer was "500,000". This finding is supported by the evidence. When asked how many bottles GCC could have produced in November and December, 1975, Sanford Harvey, Plant

Manager of GCC's Palestine plant, stated that he had an 8-section machine devoted exclusively to the MBC contract. That machine alone had the capacity to produce 450,000 cases of bottles in two months. At the same time he had a 6-section machine which was idle for lack of orders. Had MBC requested the 500,000 cases in the two month period, Mr. Sanford testified, the 8-section machine and the 6-section machine would have been adequate to complete the order.

By October, 1976, MBC had purchased 1,877,274 cases of the 2,500,000 cases it agreed to purchase in 1976, pursuant to Purchase Order Number 95670.

In Question No. 4 the jury was asked:
How many of the 2,500,000 cases of bottles in the purchase order(s) specified in Question No. 3 do you find from a preponderance of the evidence that GCC was able or would have been able to produce and deliver in acceptable quality by December 31, 1976?

The jury's answer, again in reference to cases, was "2,500,000".

In October, 1976, MBC directed GCC to stop producing bottles pursuant to Purchase Order Number 95670. MBC then agreed to take GCC's inventory on hand and one week's run of bottles.

In Question No. 12 the jury was asked:
Do you find from a preponderance of the evidence that the agreement entered into between MBC and GCC in October, 1976, in which MBC agreed to purchase GCC's existing inventory of cases of bottles plus one week's run of an acceptable quality, required MBC to make such purchase prior to December 31, 1976?

The jury found that MBC agreed to make the purchase prior to December 31, 1976. Although MBC did not make the purchase prior to December 31, 1976, as required by the contract, MBC argues that had it attempted to do so GCC would not have been able to deliver 330,000 cases of bottles of

---

**4.** Compare Rule 8(c) of the Federal Rules of Civil Procedure to Rule 92 of the Texas Rules of Civil Procedure.

acceptable quality prior to December 31, 1976.

■ Neither party requested a jury question concerning whether GCC had the capability to deliver to MBC 330,000 cases of bottles of acceptable quality before December 31, 1976. Since in question number 4 the jury found GCC capable of producing 2,500,000 cases of bottles of acceptable quality and delivering them by December 31, 1976, 622,726 cases more than MBC actually purchased in 1976, we believe the jury's findings covered the question satisfactorily. Even if the question were not impliedly answered in the manner we describe, since neither party requested a jury finding on this specific question it is deemed answered in affirmative, according to the provisions of Rule 49(a)[5] of the Federal Rules of Civil Procedure.

■ The question raised by MBC's appeal is whether there is sufficient evidence in the record for a reasonable jury to have found GCC capable of delivering the 330,-000 cases in satisfactory condition before December 31, 1976. The evidence on this point is mixed. MBC introduced an inter-office memo written by a sales manager for GCC, Cecil Ullom, dated October 21, 1976. The memo stated that as of October 18, 1976, the inventory on hand was 230,000 cases. Of this 62,000 cases, manufactured before June 4, 1976, were held back for unspecified defects. 72,000 cases were held because of short capacity.[6] The record does not show whether Ullom's memo was based upon first hand or second hand knowledge. The manager of GCC's Palestine plant, Sanford Harvey, professed to have no knowledge of the figures cited, which pertained to his plant. Neither side called Mr. Ullom as a witness. Harvey testified that inventory in October, 1976, was 350,000 cases of

bottles. He said that the major quality complaints MBC had in late 1976 related to MBC's delays in purchasing bottles—the bottles became dirty, cardboard cases were crushed from moisture and palettes shrunk. MBC's quality control manager testified on deposition that in late 1976 MBC had no significant complaints concerning the quality of the bottles covered by the inventory agreement. MBC offered no evidence of the state of GCC's inventory or its capabilities to deliver bottles in late December, 1976.

■ On appeal, we do not weigh the evidence but determine what a reasonable jury from the evidence could have found. *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir., 1969) (en banc). On the record before us we have no warrant to hold that a reasonable jury could not have found GCC capable of delivering the 330,000 cases of bottles covered by the inventory agreement, in satisfactory condition, prior to December 31, 1976.

### Attorney's Fees

MBC and GCC stipulated before trial that if GCC was entitled to attorney's fees a fair award would be $30,000. GCC's claim for attorney's fees is based upon Article 2226 of the Texas Revised Civil Statutes.

■ In Texas, attorney's fees are not awarded unless specifically authorized by statute, *Innes v. Webb*, 538 S.W.2d 237, 240 (Tex.Civ.App.1976).

Effective, August 29, 1977, the Texas Legislature amended Article 2226 to allow a prevailing party to recover attorney's fees in "suits founded on oral or written contracts . . . .".

Article 2226 (as amended in 1977) provides in pertinent part that:

5. Rule 49(a) provides in pertinent part that: If . . . the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in

accord with the judgment on the special verdict.

6. MBC and GCC used different systems for determining the internal capacity of bottles. Often GCC's measurements would show a bottle had adequate capacity while MBC's would show short capacity.

Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.

Although, in the main, the cause of action had come into existence prior to August 29, 1977 this suit was not filed until October 13, 1977.

In 1979 the Legislature amended Article 2226 so as to specify that it should apply "to all pending and future actions, regardless of the time of institution thereof or of the accrual of any cause of action asserted".

The case was not tried, nor judgment entered, until after this amendment became effective.

We next look to the provisions of the Texas Revised Civil Statutes, Article 10, Section 8:

The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subject to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice.

In this regard, see the discussion in *Reynolds v. Allstate Insurance Company*, 629 F.2d 1111, 1117 (5th Cir., 1980); 633 F.2d 1208 (1981) [Goldberg, Garza, and Reavley, JJ., all Texas Judges].

While we must act in the absence of a definitive decision of the Supreme Court of Texas, which would be controlling on this state law issue, it is our considered judgment that if this case were before it the Supreme Court would hold, as we now do, that the appellant was liable for attorney's fees.

*Conclusion*

The judgment of the District Court, entered pursuant to the jury verdict, is AFFIRMED.

The denial of the attorney's fees, in the amount stipulated, is REVERSED.

The case is REMANDED for the entry of an amended judgment which will include the attorney's fees.