COASTAL LEASING CORPORATION, Plaintiff v. T-BAR S CORPORATION d/b/a WESTERN SIZZLIN and GEORGE TERRANCE TALBOTT and SHARON T. TALBOTT, Defendants

No. COA97-382

(Filed 20 January 1998)

### 1. Bailment § 1 (NCI4th)— cash register lease—governing statute

The lease of cash register equipment was governed by N.C.G.S. § 25-2A-103 since both parties agreed that the transaction was a lease and, by its terms, N.C.G.S. § 25-2A applies to any transaction, regardless of form, that creates a lease.

### 2. Damages § 59 (NCI4th)— cash register lease—liquidated damages—enforceable

The trial court did not err by granting summary judgment for plaintiffs on the issue of enforcing a liquidated damages clause in a cash register lease where plaintiff did not exercise a superior bargaining position in the negotiation of the clause and the clause placed plaintiff in the position it would have occupied had the lease been fully performed by allowing it to accelerate the balance of the lease payments and repossess the equipment.

### 3. Secured Transactions § 8 (NCI4th)— leased cash registers—default—accelerated balance—repossession—sale to owner—re-lease—calculation of credit

The trial court erred by granting summary judgment for plaintiffs on the issue of the commercial reasonableness of the sale of leased cash register equipment following defendants' default where plaintiffs, the lessors, purchased the equipment, re-leased some of it, and sought to recover the accelerated balance under the original lease minus the net proceeds of the sale. Commercial reasonableness was not addressed and the matter was remanded for a calculation of defendants' credit under the liquidated damages clause of the lease because plaintiffs retained title to the equipment at all relevant times. The sale was not a "sale" within the meaning of the liquidated damages clause.

Appeal by defendants from judgment entered 8 January 1997 by Judge Michael R. Morgan in Wake County District Court. Heard in the Court of Appeals 29 October 1997.

*Smith Debnam Hibbert, L.L.P., by Caren D. Enloe, for plaintiff-appellee.*

*Higgins, Frankstone, Graves & Morris, P.A., by David J. Hart, for defendants-appellants.*

WALKER, Judge.

Plaintiff entered into a lease agreement (lease) with defendant T-Bar S Corporation (T-Bar) in May of 1992, whereby plaintiff agreed to lease certain cash register equipment (equipment) to T-Bar. Under the lease, T-Bar agreed to monthly rental payments of $289.13 each for a total of 48 months. Defendants George and Sharon Talbott (appellants) were the officers of T-Bar and personally guaranteed payment of all amounts due under the lease.

After making 18 of the monthly payments, appellants and T-Bar defaulted on the lease in December of 1993. On 28 February 1994, plaintiff mailed a certified letter to appellants and T-Bar, return receipt requested, advising them that the lease was in default and, pursuant to the terms of the lease, plaintiff was accelerating the remaining payments due under the lease. They further advised appellants and T-Bar that if the entire amount due of $8,841.06 was not received within 7 days, plaintiff would seek to recover the balance due plus interest and reasonable attorneys' fees, as well as possession of the equipment. The record shows that appellants and T-Bar each received this letter on 1 March 1994.

On 10 March 1994, plaintiff mailed a certified letter and "Notice of Public Sale of Repossessed Leased Equipment" (notice of sale) to appellants and T-Bar at the same address, again return receipt requested. This letter advised appellants and T-Bar that plaintiff had taken possession of the equipment and was conducting a public sale pursuant to the terms of the lease. Although the date on the notice of sale stated that the sale was to be held on 23 March 1994, the sale was actually scheduled to be held on 25 March 1994. This letter and notice of sale were returned to plaintiffs "unclaimed" on 29 March 1994.

Plaintiffs conducted a public sale of the equipment on 25 March 1994 and no one appeared on behalf of appellants or T-Bar. There being no other bidders, plaintiff purchased the equipment at the sale for $2,000.00.

On 4 October 1994, plaintiff leased some of the same equipment to another company at a rate calculated to be $212.67 for 36 months. Plaintiff then filed this action on 6 October 1994 seeking to recover

the balance due under the lease, minus the net proceeds from the 25 March 1994 public sale, plus interest and reasonable attorneys' fees. Appellants filed an answer and counterclaim on 27 July 1995. Plaintiff then filed a motion for summary judgment against appellants on 8 July 1996. When T-Bar failed to answer, a default judgment was entered against it on 30 December 1996.

After a hearing, the trial court entered summary judgment on 15 January 1997 in favor of plaintiff on its complaint and appellants' counterclaims and entered judgment against appellants for the sum of $7,223.56 plus interest and attorneys' fees of $1,083.54.

At the outset, we first note that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 300, 337 S.E.2d 644, 647 (1985), *disc. review allowed*, 315 N.C. 589, 341 S.E.2d 28 (1986).

Equipment leasing transactions are an ever increasing segment of commercial activity in North Carolina as well as in the rest of the United States. According to recent U.S. Department of Commerce statistics, "leasing transactions accounted for approximately $168.9 billion of new equipment installed in 1996, an expansion of 11.6% over 1995." Stephen T. Whelan et al., *Leases*, 52 Bus. Law. 4, at 1517 (1997).

[1] A threshold issue in this case is whether the transaction involved is a lease or a security interest disguised as a lease. If it is a security interest disguised as a lease, it will be governed by N.C. Gen. Stat. § 25-9 (Article 9). However, if it is a lease, it will be governed by N.C. Gen. Stat. § 25-2A (Article 2A). *See* N.C. Gen. Stat. § 25-2A-103 cmt. j (1995).

By its terms, Article 2A "applies to any transaction, regardless of form, that creates a lease." N.C. Gen. Stat. § 25-2A-102 (1995). Further, a "lease" is defined as "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale . . . is not a lease." N.C. Gen. Stat. § 25-2A-103(1)(j) (1995). In contrast, a transaction involves a security interest if it meets the general definition set forth in part 2 of Article 1. *See* N.C. Gen. Stat. § 25-1-201(37)(a) (1995). Since both parties agree that the transaction at issue in this case is not a security interest, but rather is a lease, Article 2A controls.

Before addressing appellants' assignments of error, we should note that Article 2A did not become effective in this State until 1 October 1993. Therefore, there is an absence of case law interpreting this Article.

[2] In their appeal, appellants contend that the trial court erred by granting summary judgment in favor of plaintiff because there exists a genuine issue of material fact as to whether: (1) the liquidated damages clause contained in Paragraph 13 of the lease is reasonable in light of the then-anticipated harm caused by default; and (2) plaintiff conducted the sale of the equipment in a commercially reasonable manner.

As to appellants' first contention, the official commentary to Article 2A states that "in recognition of the diversity of the transactions to be governed [and] the sophistication of many of the parties to these transactions . . ., freedom of contract has been preserved." N.C. Gen. Stat. § 25-2A-102 Official Comment (1995). Also, under general contract principles, when the parties to a transaction deal with each other at arms length and without the exercise by one of the parties of superior bargaining power, the parties will be bound by their agreement. *See Suits v. Insurance Co.*, 249 N.C. 383, 386, 106 S.E.2d 579, 582 (1959).

Article 2A recognizes that "[m]any leasing transactions are predicated on the parties' ability to agree to an appropriate amount of damages or formula for damages in the event of default or other act or omission." N.C. Gen. Stat. § 25-2A-504 Official Comment (1995). N.C. Gen. Stat. § 25-2A-504 states, in pertinent part:

(1) Damages payable by either party for default, or any other act or omission . . . may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then-anticipated harm caused by the default or other act or omission.

N.C. Gen. Stat. § 25-2A-504(1) (1995). This liquidated damages provision is more flexible than that provided by its statutory analogue under Article 2, N.C. Gen. Stat. § 25-2-718. The Article 2 liquidated damages section provides, in pertinent part:

(1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, *the difficulties of proof of loss, and the inconvenience or nonfeasibility*

*of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.*

N.C. Gen. Stat. § 25-2-718(1) (1995) (emphasis added). A review of these statutes reveals two major differences.

First, the drafters of Article 2A chose not to incorporate the two tests which are required by Article 2, i.e., the difficulties of proof of loss and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. In fact, the official commentary to N.C. Gen. Stat. § 25-2A-504 states that since "[t]he ability to liquidate damages is critical to modern leasing practice . . . [and] given the parties' freedom to contract at common law, the policy behind retaining these two additional requirements here was thought to be outweighed." N.C. Gen. Stat. § 25-2A-504 Official Comment (1995).

Secondly, the drafters of Article 2A recognized that in order to further promote freedom of contract, it was necessary to delete the last sentence of N.C. Gen. Stat. § 25-2-718(1), which provided that unreasonably large liquidated damages provisions were void as a penalty. As such, the parties to a lease transaction are free to negotiate the amount of liquidated damages, restrained only by the rule of reasonableness.

"The basic test of the reasonableness of an agreement liquidating damages is whether the stipulated amount or amount produced by the stipulated formula represents a reasonable forecast of the probable loss." 3A Hawkland and Miller, *Uniform Commercial Code Series* § 2A-504:02 (1993). However, "no court should strike down a reasonable liquidated damage agreement based on foresight that has proved on hindsight to have contained an inaccurate estimation of the probable loss. . . ." *Id.* And, "the fact that there is a difference between the actual loss, as determined at or about the time of the default, and the anticipated loss or stipulated amount or formula, as stipulated at the time the lease contract was entered into . . .," does not necessarily mean that the liquidated damage agreement is unreasonable. *Id.* This is so because "[t]he value of a lessor's interest in leased equipment depends upon 'the physical condition of the equipment and the market conditions at that time.'" *Pacificorp Capital, Inc. v. Tano, Inc.*, 877 F. Supp. 180, 184 (S.D.N.Y. 1995) (citation omitted). Further, in determining whether a liquidated damages clause is reasonable:

[A] court should keep in mind that the clause was negotiated by the parties, who are familiar with the circumstances and prac-

tices with respect to the type of transaction involved, and the clause carries with it a consensual apportionment of the risks of the agreement that a court should be slow to overturn.

*Hawkland and Miller,* supra, at § 2A-504:02.

In this case, Paragraph 13 of the lease (the liquidated damages clause) reads as follows:

13. REMEDIES. If an event of default shall occur, Lessor may, at its option, at any time (a) declare the entire amount of unpaid rental for the balance of the term of this lease immediately due and payable, whereupon Lessee shall become obligated to pay to Lessor forthwith the total amount of the said rental for the balance of the said term, and (b) without demand or legal process, enter into the premises where the equipment may be found and take possession of and remove the Equipment, without liability for suit, action or other proceeding, and all rights of Lessee in the Equipment so removed shall terminate absolutely. Lessee hereby waives notice of, or hearing with respect to, such retaking. Lessor may at its option, use, ship, store, repair or lease all Equipment so removed and sell or otherwise dispose of any such Equipment at a private or public sale. In the event Lessor takes possession of the Equipment, Lessor shall give Lessee credit for any sums received by Lessor from the sale or rental of the Equipment after deduction of the expenses of sale or rental and Lessor's residual interest in the Equipment. . . . Lessor and Lessee acknowledge the difficulty in establishing a value for the unexpired lease term and owing to such difficulty agree that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty. . . .

All remedies of Lessor hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of the Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this lease.

After a careful review, we conclude the liquidated damages clause is a reasonable estimation of the then-anticipated damages in the event of default because it protects plaintiff's expectation inter-

est. The liquidated damages clause places plaintiff in the position it would have occupied had the lease been fully performed by allowing it to accelerate the balance of the lease payments and repossess the equipment. Therefore, since there is no evidence that plaintiff exercised a superior bargaining position in the negotiation of the liquidated damages clause, no genuine issue of material fact exists as to its reasonableness, and the trial court did not err by enforcing its provisions.

[3] Appellants next contend that the trial court erred by granting summary judgment for plaintiff because a genuine issue of material fact existed as to whether plaintiff conducted the sale of the equipment in an appropriate manner. Although they concede that plaintiff had the authority under N.C. Gen. Stat. § 25-2A-527(1) (1995), as well as under the lease, to dispose of the equipment by resale, appellants argue that plaintiff did not conduct the sale in a "commercially reasonable manner."

However, for the reasons discussed below, we find that the 25 March 1994 sale of the equipment was not a "sale" within the meaning of the lease, and we therefore decline to address the issue of commercial reasonableness.

Article 2 defines a "sale" as consisting of "the passing of title from the seller to the buyer for a price." N.C. Gen. Stat. § 25-2-106(1) (1995). In this case, we note that since the transaction involves a lease, and not a security interest, title to the equipment was never transferred to appellants or T-Bar, but remained with plaintiff at all times. *See* N.C. Gen. Stat. § 25-2A-302 (1995). The lease specifically provides that plaintiff retained title to the equipment. Section 6 of the lease states, in pertinent part, "[n]o title or right in said equipment shall pass to Lessee except the rights herein expressly granted." Further, Section 18 of the lease provides that "the title to the equipment subject to this Lease is retained by the Lessor and the Lessee covenants that it will not pledge or encumber the equipment in any manner whatsoever. . . ."

Therefore, since plaintiff retained title to the equipment at all relevant times, the portion of the liquidated damages clause which allowed plaintiff, upon default, to repossess the equipment and then "sell or otherwise dispose of any such equipment at a public or private sale" must reasonably be interpreted as providing plaintiff with the right to sell or release the equipment to the appellants or another third party, not to itself. A contrary conclusion would permit a lessor

to "purchase" repossessed equipment, even though it never relinquished title, at a price not necessarily related to its market value. The lessor could then release the equipment to another party, crediting the defaulting lessee only for the amount realized from the purported sale. Accordingly, the trial court erred by treating the 25 March 1994 sale as a "sale" under the terms of the liquidated damages clause and calculating the amount of appellants' credit based on such purported sale.

In conclusion, we affirm the trial court's determination that the liquidated damages clause in the lease is enforceable against the appellants. However, we reverse and remand the case for a determination of how much credit, if any, the appellants are entitled to receive under the terms of the liquidated damages clause.

Affirmed in part, reversed in part and remanded.

Judges LEWIS and TIMMONS-GOODSON concur.