**In re James Edward SNELSON, Debtor.**

**No. 01–43150–BJH–11.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

July 7, 2003.

David G. Aelvoet, Linebarger, Goggan, Blair & et al, San Antonio, TX, Margaret G. Baker, Brown and Shapiro, Pasadena, TX, Michael W. Deeds, Linebarger, Goggan, Blair et al., Dallas, TX, Cynthia G. Dooley, Brousseau & Associates, Dallas, TX, Josephine Garrett, Ft. Worth, TX, James R. Gravley, Gravley, Wheeler, McCray & Leggett, Abilene, TX, David L. Hooper, Abilene, TX, John E. Johnson, Jameson and Dunagan, Dallas, TX, Sherrel K. Knighton, Linebarger, Goggan, Blair and Sampson, Dallas, TX, June A. Mann, Mann and Stevens, Houston, TX, Ronald M. Mapel, Ronald M. Mapel, Attorney at Law, San Angelo, TX, David L. Pritchard, Bedford, TX, Peter Michael Reed, McCreary, Veselka, Bragg and Allen, Austin, TX, Tommy J. Swann, McCleskey, Harriger, Brazill and Graf, Lubbock, TX, Thomas Michael Wheeler, Gravley, Wheeler, McCray and Leggett, Abilene,

TX, Mark S. Zachary, McMahon, Surovik, Suttle, et al., Abilene, TX, for Creditors.

William Sterrett Parkinson, Office of the U.S. Trustee, Dallas, TX, U.S. Trustee.

Tim Truman, Hill–Gilstrap, P.C., Ft. Worth, TX, for Debtor.

## *MEMORANDUM OPINION*

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is Citicorp Vendor Finance, Inc.'s ("Citicorp") Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(a) (the "Administrative Claim Motion"). The Court has core jurisdiction over the Administrative Claim Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

A contested hearing on the Administrative Claim Motion was commenced on March 24, 2003, but, due to an inadequate time estimate, the Court did not have sufficient time available within which to conclude the hearing. The Court asked the parties to obtain a continued hearing date that was convenient to the parties and any remaining witnesses. The hearing resumed on May 7, 2003. At the conclusion of that hearing, Citicorp asked for the opportunity to file a post-hearing brief on certain issues. The Debtor asked for the opportunity to reply. Pursuant to an agreed schedule, the Debtor's reply brief was filed on May 28, 2003, at which time the Court took the Motion under advisement. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable here by Federal Rule of Bankruptcy Procedure 7052.

### FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed a voluntary chapter 11 case (the "Case") on April 30, 2001 (the "Petition Date"). Prior to the Petition Date, the Debtor, as the owner of J.E. Snelson Printing Co., entered into an equipment lease with Citicorp dated July 28, 1999 (the "Lease"). The Lease provided for the use of one Komori Six color printing press and other related equipment (the "Equipment") for 84 months, payable at a $3,533.93 monthly rental rate. *See* Citicorp's Trial Exhibit 1. The Lease provides that it is "governed by and [to be] construed according to the laws of the State of New Jersey." Citicorp's Trial Exhibit 1.

After the Petition Date, the Debtor moved to assume the Lease and, upon the Debtor's filing of a certificate of no objection, the Court entered an order granting the Debtor's motion to assume on August 21, 2001 (the "Assumption Order"). Following entry of the Assumption Order, the Debtor failed to make the required monthly payments under the Lease. As a result, Citicorp filed a motion for relief from stay so that it could exercise its remedies under the Lease, and the parties negotiated an agreed order (the "Agreed Stay Order") allowing the stay to lift and Citicorp to repossess and sell the Equipment. The Agreed Stay Order was signed by both parties and entered by the Court on April 16, 2002.

Thereafter, Citicorp obtained a fair market value appraisal of the Equipment, resold it, and obtained net proceeds of $89,250.00 from the sale. After crediting the net sale proceeds and the post-petition Lease payments made by the Debtor, Citicorp claims to be owed an additional $90,858.69 in accordance with the terms of the Lease. *See* Citicorp's Second Supplement to Request of Citicorp Vendor Finance, Inc. for Allowance of Administrative Expense Claim (the "Second Supple-

ment"). Citicorp asserts an administrative expense claim for this unpaid amount, as well as a claim for its attorneys' fees and expenses incurred in the Case after the entry of the Assumption Order in the amount of $28,872.50, bringing Citicorp's total requested administrative expense claim to $119,731.19. *See* Second Supplement.

The Debtor filed a terse, 2–page response to the Administrative Claim Motion generally denying Citicorp's entitlement to such a claim. The most specific allegation in the Debtor's response was the following statement: "Debtor DENIES that Citicorp [ ] properly mitigated its damages, and DENIES that there is any sum due to Citicorp under the lease." Debtor's Response and Objection to Citicorp's Administrative Claim Motion at p. 2.

At the initial hearing held on March 24, 2003, the Debtor's legal argument focused on his contention that the Lease was not a true lease, but rather was a secured financing. Specifically, the Debtor argued that (i) even though he had characterized the Lease as an executory contract in Schedule G and actually treated the Lease as a lease by assuming it, the underlying transaction with Citicorp was not really a lease arrangement but was a secured financing,[1] and (ii) because the Lease was really a secured financing, and not a lease, Citicorp's sale of the Equipment had to occur in a commercially reasonable man-

ner pursuant to article 9 of the Uniform Commercial Code. The Debtor then asserted that Citicorp failed to dispose of the Equipment in a commercially reasonable manner.

In response, Citicorp argued that the Debtor was judicially estoppel from asserting that the Lease was not a true lease due to his actions in the Case including (i) characterizing the Lease as an executory contract in Schedule G, (ii) assuming the Lease in accordance with Section 365 of the Bankruptcy Code, (iii) continuing to treat the Lease as a true lease after assumption, and (iv) continuing his characterization of the Lease as a true lease in his proposed plan of reorganization and disclosure statement (which was proceeding to confirmation on a substantially contemporaneous time line). In support of its judicial estoppel argument, Citicorp relied upon the Fifth Circuit's decision in *In re Coastal Plains, Inc.,* 179 F.3d 197 (5th Cir.1999) (holding that judicial estoppel prevents a party from successfully asserting one legal position in a prior proceeding and then assuming a contrary position because its interests have changed).[2]

The Debtor was unable to cite the Court to any authority in support of his position that he should not be judicially estopped from changing his position regarding the nature of the underlying transaction with Citicorp. Specifically, the Debtor had no cases to support his request that the Court

---

**1.** If the arrangement between Citicorp and the Debtor was a secured financing, the contract would not have been an assumable executory contract as a matter of law. *See* 11 U.S.C. § 365(c)(2). *See also In re Cox,* 179 B.R. 495, 498 (Bankr.N.D.Tex.1995) (citing *Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express, Inc.),* 780 F.2d 1482, 1487 (9th Cir.1986)).

**2.** According to the *Coastal Plains* court, "[t]he doctrine is generally applied where 'intentional self-contradiction is being used as a means

of obtaining unfair advantage in a forum provided for suitors seeking justice.' " 179 F.3d 197, 206 (quoting *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir.1953)). Moreover, " '[t]he policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " 179 F.3d at 206 (quoting *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993)).

permit the recharacterization of the underlying transaction as a secured financing after assumption of the Lease as an executory contract.

Because the scope of relevant testimony and other evidence would depend upon the outcome of this threshold issue, the Court ruled from the bench that the Debtor was judicially estopped from making its secured financing argument. Thereafter, Citicorp began presenting its evidence in support of its requested administrative claim. As noted previously, the parties had underestimated the time needed to hear the Administrative Claim Motion and the Court ran out of available time to conclude the hearing on March 24. When the recess occurred, both Citicorp and the Debtor had rested their respective cases-in-chief, but Citicorp had certain rebuttal evidence it wished to present, so the evidence was not yet closed.

The Debtor did not seek to amend his response in opposition to the Administrative Claim Motion after the Court ruled that he was judicially estopped to make his secured financing argument, and neither party filed additional substantive briefing on the legal issues presented by the motion prior to the continued hearing.[3] When the continued hearing resumed on May 7, 2003, the Court asked the Debtor if he wished to make a further opening argument. The Debtor declined and Citicorp moved forward with the balance of its evidence.

Thereafter, in his closing argument, the Debtor argued for the first time that the Lease contained an invalid penalty clause. Specifically, the Debtor argued that the Lease was a finance lease governed by Article 2A of the New Jersey Uniform Commercial Code (the "UCC"), and that

the Lease's liquidated damages clause was a penalty which was unenforceable under New Jersey law. According to the Debtor, once a liquidated damages clause is held unenforceable as a penalty, the UCC provides an alternate damage calculation on which Citicorp had failed to offer the evidence necessary to the Court's determination of Citicorp's lawful damages. Thus, according to the Debtor, Citicorp had failed to carry its burden of proof and the Administrative Claim Motion must be denied. *See* Debtor's [Post–Trial] Brief in Support of His Objection to Citicorp's Request for Allowance of Administrative Claim (the "Debtor's Post–Trial Brief") at pp. 8–9.

Citicorp was not prepared to make a closing argument addressing the Debtor's new legal theory and asked to file a post-trial brief addressing it. The Court permitted both parties to file post trial briefs on the relevant issues. Citicorp did not seek to reopen the evidence.

## LEGAL ANALYSIS

 Under the Bankruptcy Code, the Debtor had the right to assume or reject the Lease. 11 U.S.C. § 365. However, after electing to assume it, the Debtor was required to perform the Lease in accordance with its terms. *See In re Texas Health Enters., Inc.,* 246 B.R. 832, 835 (Bankr.E.D.Tex.2000); *see also In re Nat'l Gypsum Co.,* 208 F.3d 498, 505 (5th Cir. 2000). Moreover, once assumed, damages flowing from a post-assumption breach are entitled to administrative claim status in the Case. 11 U.S.C. § 503(b)(1)(A); *see also* 3 COLLIER ON BANKRUPTCY ¶ 365.03[2] at 365–22 (L. King 15th ed.); *In re Greystone III Joint Venture,* 995 F.2d 1274,

---

**3.** On May 6, 2003, Citicorp filed the Second Supplement, in which it provided further detail regarding its attorneys' fees and expenses.

1281 (5th Cir.1991), *cert. denied*, 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Boston Post Road Ltd. P'ship*, 21 F.3d 477, 484 (2d Cir.1994); *In re Frontier Props. Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992); *In re Sporting Way Inc.*, 126 B.R. 110, 112 (Bankr.M.D.Fla.1991). Thus, the Court must determine the amount of damages Citicorp is entitled to recover from the Debtor as an administrative claim for his post-assumption breach of the Lease.

The Lease is a finance lease governed by New Jersey law. *See* Citicorp's Trial Exhibit 1, section 12. The Lease contains a liquidated damages clause which provides, as relevant here, that Citicorp may:

exercise any one or more of the following remedies: (i) declare due, sue for and receive from you the sum of all rental payments and other amounts then due and owing under this Agreement or schedule thereto, plus the present value of (x) the sum of the rental payments for the unexpired term of this Agreement or any schedule hereto discounted at the rate of 6% per annum and (y) the anticipated value of the Equipment at the end of the initial term or applicable renewal term of the Agreement (but in no event less than 15% of the original cost of the Equipment) discounted at the rate of 6% per annum and upon recovery of the same in full, the Equipment shall become your property; (ii) to similarly accelerate the balances due under any other agreements between us; (iii) to take immediate possession of the Equipment, and to lease or sell the Equipment or any portion, thereof, upon such terms as we may elect, and to apply the net proceeds, less reasonable selling and administrative expenses, on account of your obligations hereunder; (iv) charge you interest on all monies due us from and after the date of default at the rate of one and one third percent (1–1/3%) per month until paid but in no event more than the maximum rate permitted by law; (v) require you to return all Equipment at your expense to a place reasonably designated by us; (vi) to charge you for all expenses incurred in connection with the enforcement of any of our remedies including all costs of collection, reasonable attorney's fees and court costs....All our remedies are cumulative, are in addition to any other remedies provided for by law and may, to the extent permitted by law, be exercised either concurrently or separately.

Citicorp Trial Exhibit 1, section 10.

Citicorp asserts that it is owed $119,731.19 in accordance with this liquidated damages clause.[4] *See* Administrative Claim Motion; Supplement to Administrative Claim Motion; and Second Supplement. Citicorp calculates this claim as follows: the total rent payments required by the Lease (the amount of $296,850.12) less (i) the prepetition rent payments made by the Debtor ($70,-678.60), (ii) the post-petition rent payments made by the Debtor ($28,271.46), and (iii) the past due rent payments ($14,135.72),[5] leaving a balance of

---

**4.** As discussed in more detail hereinafter, liquidated damages provisions are enforced under certain circumstances under the UCC. *See* N.J. Stat. Ann. § 12A:2A–504 ("Damages payable by either party for default ... may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission."); *see* also *infra* at pp. 264–65. The statutory default is not triggered if the liquidated damages provision is a reasonable one. *See* N.J. Stat. Ann. § 12A:2A–527(2) ("Except as otherwise provided with respect to damages liquidated in the lease agreement ....").

**5.** For purposes of making the present value calculation this amount is deducted and then added back.

$183,764.34 which, under the terms of the Lease, must be discounted at 6% per annum to a net claim of $162,379.00. After adding back the past due rent payments as of the Petition Date ($14,135.72) and the late charges accrued as of the Petition Date ($3,593.97), and subtracting the net proceeds obtained by Citicorp from its sale of the Equipment ($89,250.00),[6] Citicorp asserts it is owed $90,858.69 to which it adds attorneys' fees and costs of $28,872.50 for a total administrative claim of $119,731.19. *See* Exhibit A to Second Supplement.

As noted previously, at the continued hearing the Debtor asserted that Citicorp's damage claim based on the liquidated damages provision of the Lease was unenforceable as a penalty and therefore, Citicorp's damages must be calculated under Article 2A of the UCC. *See* Debtor's Post–Trial Brief at pp. 3–5. Under Article 2A of the UCC, if the liquidated damages provision is found not to be "reasonable in light of the then anticipated harm caused by the default or other act or omission," N.J. STAT. ANN. § 12A:2A–504, the substitute remedy is statutorily-prescribed damages which are limited to:

(i) accrued and unpaid rent as of the date of default if the lessee has never taken possession of the goods, or, if the lessee has taken possession of the goods, as of the date the lessor repossesses the goods or an earlier date on which the lessee makes a tender of the goods to the lessor, (ii) the present value as of the date determined under clause (i) of the total rent for the then remaining lease term of the original lease agreement minus the present value as of the same date of the market rent at the place where the goods are located computed for the same lease term, and (iii) any incidental damages allowed under 12A:2A–530, less expenses saved in consequence of the lessee's default.

N.J. STAT. ANN. § 12A:2A–528.

The Debtor asserts that if clause (i) of the liquidated damages provision in the Lease is stricken as a penalty—*i.e.,* found not to be reasonable in light of the then anticipated harm caused by the default, the remaining clauses do not "otherwise provide" for a determination of damages, *see* N.J. STAT. ANN. § 12A:2A–527(2), and therefore, the alternative, statutory damages must be proven by Citicorp. *See* Debtor's Post–Trial Brief at pp. 5–6. According to the Debtor, because Citicorp proved its damages in accordance with the liquidated damages provision of the Lease, and not the alternative, statutory damages, Citicorp loses. Moreover, in response to Citicorp's argument in its post-trial brief that the Debtor waived his penalty argument by not specifically pleading it in his original response, or in raising the issue at any time prior to the close of the evidence, the Debtor also argues that it is Citicorp's fault that he did not specifically plead penalty. According to the Debtor, because Citicorp failed to plead its entitlement to liquidated damages under the Lease, the Debtor had no obligation to plead his penalty defense. *See* Debtor's Post–Trial Brief at p. 8.

■ While the Court will address the penalty issue further below, the argument that Citicorp failed to plead a right to liquidated damages under the Lease in the Administrative Claim Motion is disingenu-

---

**6.** Rachel Cain, the Citicorp employee responsible for administering the Lease, testified that the gross proceeds received from the sale of the Equipment were $105,000.00. Richard Assen, the president of United Graphic Equipment (the third party hired by Citicorp to market and sell the Equipment), testified that the net proceeds of the sale were $89,250.00 (after payment of the agreed 15% commission to him).

ous. Upon the filing of the Administrative Claim Motion, the Debtor was put on notice that Citicorp was claiming damages for the Debtor's default under the Lease. Moreover, the Administrative Claim Motion contains Citicorp's specific damage calculation which tracks the liquidated damages provision of the Lease. *See* Administrative Claim Motion. While it is true that the Administrative Claim Motion does not use the phrase "liquidated damages," or reference the Lease remedies provision, Citicorp's reliance on the liquidated damages provision of the Lease is obvious from the substance of the Administrative Claim Motion. Thus, the Debtor's post-trial argument that Citicorp failed to plead its entitlement to liquidated damages is without merit.

█ Turning next to Citicorp's waiver argument, Citicorp argues in its post-trial brief that "the allegation that a liquidated damages provision is unenforceable as a penalty is an affirmative defense to a breach of contract claim. Debtor did not plead that defense and therefore waived it, inasmuch as his failure to plead resulted in unfair surprise and prejudice to Citicorp." Citicorp's Brief Regarding Alleged Penalty Damage Clause ("Citicorp's Post–Trial Brief") at p. 2. Specifically, Citicorp contends that (i) the Debtor waived the affirmative defense of penalty by failing to plead it, and (ii) the "revelation" of this affirmative defense after the close of the evidence caused unfair prejudice to Citicorp and amounted to a trial by ambush. *See id.* at pp. 10–13.

█ The Court agrees. An affirmative defense not pled is considered waived. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999); *Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1233 (5th Cir.1986); *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 193–94 (5th Cir.1985);

*see also Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 (7th Cir.2002) ("A party cannot obtain recovery or base its affirmative defense on legal theories that are not contained in the pleadings.") (citing *Grain Traders Inc. v. Citibank*, 160 F.3d 97, 105 (2d Cir.1998) and *Ins. Co. of N. Am. v. Moore*, 783 F.2d 1326, 1327–28 (9th Cir.1986)). Federal procedural law governs whether a particular defense is an affirmative defense that must be specifically pled. *See Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308, 313 (5th Cir.1981) (federal procedural law also applies in diversity actions) ("Since the requirement to plead an affirmative defense is a procedural rule, it is governed ... by the Federal Rules."). Federal Rule of Civil Procedure 8(c) provides a non-exclusive list of the affirmative defenses that must be "set forth affirmatively," such as "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by a fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.*" FED. R. CIV. P. 8(c) (emphasis added). Courts have held that a contention that a liquidated damages provision is unenforceable because it is a penalty is an affirmative defense that the contending party must plead and prove. *See Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 594 (7th Cir.1994) (party asserting penalty clause defense bears burden of pleading and proving); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg.*, 15 F.3d 1222, 1227 (1st Cir. 1994) (statutory provision limiting damages is an affirmative defense for purposes of FED. R. CIV. P. 8(c)).

Moreover, the key to determining the sufficiency of pleading an affirmative defense is whether it gives the claimant fair notice of the defense. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999); *Automated Med. Labs. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir.1980); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir.1979). The fair notice pleading requirement is met only if the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir.1993) (citing *Bull's Corner Rest. v. Director, FEMA*, 759 F.2d 500, 502 (5th Cir.1985)). The Fifth Circuit applies a fact-specific analysis to determine whether the defendant gave fair notice of the defense or whether the defendant created unfair surprise and thus waived the defense. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir.1987); *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1233 (5th Cir. 1986); *Automated Med. Labs. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir.1980).

Here, the Debtor did not give anything resembling fair notice of his penalty defense to Citicorp. As noted previously, the most specific allegation in the Debtor's terse response to the Administrative Claim Motion was the simple statement that Citicorp had failed "to mitigate" its damages.

An allegation that Citicorp had failed to mitigate its damages is different from an allegation that a liquidated damages provision in a contract is unenforceable as a penalty (in light of the anticipated harm at the time of contracting). A failure to mitigate occurs after the default, while a penalty clause relates back to the time of contracting. *See, e.g., Ingraham v. Trowbridge Builders*, 297 N.J.Super. 72, 687 A.2d 785 (1997) (citing to Restatement (Second) of Contracts, § 350 and noting that the duty to mitigate occurs within a reasonable time after the breach). Thus, one sentence in his response about a "failure to mitigate" did not give fair notice to Citicorp of the Debtor's affirmative defense of penalty.

Moreover, the Debtor's failure to put Citicorp on notice of his penalty defense caused unfair prejudice to Citicorp. Citicorp tried its case based upon the liquidated damages provision of the Lease. Citicorp's evidentiary presentation was focused on Citicorp's good faith efforts to mitigate its damages by marketing the Equipment and obtaining the best possible price upon resale.

The Court was surprised by the penalty argument made by the Debtor for the first time in his closing argument. It was obvious to the Court that Citicorp's counsel was equally surprised.

The Debtor's conduct here is simply not permissible.[7] Trial by ambush is inappro-

---

7. This is not the first time the Court has had concerns over the conduct of the Debtor or his counsel in the Case. For example, the Debtor failed to schedule the secured claims of Messrs. Clifton and McCurdy (who had sold him the printing business and who he agreed had valid claims against him). If these creditors' claims had been correctly scheduled by the Debtor, they would not have been required to file proofs of claim in the Case. 11 U.S.C. § 1111(a), *implemented by*

FED. R. BANKR. P. 3003(b); *see also Midwest Commerce Banking v. Elkhart City Centre*, 4 F.3d 521, 523 (7th Cir.1993); *In re ATD Corp.*, 278 B.R. 758, 761–62 (Bankr.N.D.Ohio 2002). However, because their claims were omitted from the Debtor's schedules, they were required to file claims. When they failed to file proofs of claim by the bar date, the Debtor objected to their claims and sought to have their claims disallowed in their entirety, notwithstanding the fact that he

priate. A litigant cannot be silent in his pleadings, wait until the close of the evidence, and then dramatically unveil a new defense. As stated in *Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308 (5th Cir.1981), "[a] litigant cannot strategically lie behind the log until after the trial and receipt of evidence [and] argument ... before raising an issue not found in the pleadings nor included in the pretrial order and *then raise it when it is too late for his opponent to do anything about it.* The manifest prejudice of such tactics would make a shambles of the efficacy of pretrial orders and a fair trial." *Id.* at 312 (*quoting Bettes v. Stonewall Ins. Co.*, 480 F.2d 92, 94 (5th Cir.1973)) (emphasis added).

What was not permissible in *Glass Containers* is what occurred at the May 7th hearing. Citicorp had no way to know of the Debtor's new theory in defense of the Administrative Claim Motion prior to the close of the evidence. Thus, this Court will not allow the Debtor to assert his penalty defense which was raised for the first time in closing argument. Because the Debtor failed to raise this defense in his pleadings, and because of the prejudice to Citicorp, the Court concludes that the Debtor waived his penalty defense.

■■■■ However, even if the Court were to consider the Debtor's penalty defense on the merits, the Court would not strike the liquidated damages provision of the Lease as a penalty. Under New Jersey law, the Court must test the provision to determine if it is "reasonable under the totality of the circumstances." *MetLife Capital Fin. Corp. v. Washington Ave. Assoc. L.P.*, 159 N.J. 484, 732 A.2d 493, 495 (1999) (quoting *Wassenaar v. Panos*, 111 Wis.2d 518, 331 N.W.2d 357, 361 (1983)).[8] Moreover, "liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Id.* at 496 (citing *Wasserman's Inc. v. Middletown*, 137 N.J. 238, 645 A.2d 100 (1994)).

In attempting to satisfy his burden of proof here, the Debtor relied upon four cases to support his penalty argument. *See In re Montgomery Ward Holding Corp.*, 269 B.R. 1 (D.Del.2001), *aff'd* 326 F.3d 383 (3d Cir.2003); *Case Credit Corp. v. Baldwin Rental Centers, Inc. (In re Baldwin Rental Centers, Inc.)*, 228 B.R. 504 (Bankr.S.D.Ga.1998); *Carter v. Tokai Fin. Servs., Inc.*, 231 Ga.App. 755, 500 S.E.2d 638 (1998); *Coastal Leasing Corp. v. T–Bar S Corp.*, 128 N.C.App. 379, 496 S.E.2d 795 (1998). However, a close review of those cases suggests the contrary conclusion from that reached by the Debtor.

In both *Coastal Leasing* and *Baldwin*, the courts upheld liquidated damages clauses strikingly similar to the Lease provision at issue here. In *Baldwin*, the court upheld a clause providing the lessor "(1) any accrued, unpaid rent at the time of breach, plus (2) the present value of the rent for the remainder of the lease term,

agreed he owed them the money. After a contested hearing and a status conference with the Court, the Debtor's objections were settled and, after notice and a hearing, the settlements were approved by the Court. The settlements provided for substantially all of the claims to be allowed in the Case and paid under the Debtor's plan.

8. This standard is derived from the comments to § 2A–504(1) of the UCC which states "[b]y deleting the reference to unreasonably large liquidated damages, the parties are free to negotiate a formula, restrained by the rule of reasonableness in this section. These changes should invite the parties to liquidate damages." U.C.C. § 2A–504(1), Official Comment.

plus (3) the residual value of the equipment, minus (4) the present value of the net proceeds resulting from disposition of the equipment." 228 B.R. 504, 509–10. The *Baldwin* court noted that this formula was presumptively reasonable because such a provision was contemplated by the drafters of the UCC. *See* U.C.C. § 2A–504(1), Official Comment. The court also noted that because the clause required a present value discount of future rent and the credit of proceeds from disposition, the clause would not put the lessor in a better position than it would have had upon full performance. *See* 228 B.R. at 509. In *Coastal Leasing,* the court also upheld a liquidated damages clause that placed the lessor in the same position it would have had if the lease had been fully performed. *Coastal Leasing,* 128 N.C.App. 379, 496 S.E.2d 795, 799–800.

In *Montgomery Ward,* the court struck down a leveraged lease clause that forced the lessee to pay casualty values upon breach. The court found that the casualty calculation granted $3.5 million to the lessor, as opposed to the $1.5 million remaining rental obligation. In *Carter,* the court struck down a clause that entitled the lessor to the present value of future rent, plus the present value of the equipment's fair market value at lease end, plus the right to dispose of the equipment without crediting the lessee for the sale proceeds.

The provision here, like the provisions in *Coastal Leasing* and *Baldwin,* is a reasonable liquidated damages clause.[9] According to the testimony of Rachel Cain, the Citicorp employee responsible for administering the Lease, the Debtor would have paid $296,850.12 in rent to Citicorp over the term of the Lease. In fact, according to Ms. Cain, the Debtor made $70,678.60 in prepetition Lease payments and $28,271.46 in post-petition payments. After taking the required present value discount, and making the other adjustments required by the terms of the Lease, *see supra* at pp. 260–61, Citicorp is owed $90,858.69. *See id.* Once Citicorp's reasonable attorneys' fees and costs are added, Citicorp's administrative claim totals $119,731.19.

Based on the pleadings filed and the evidence presented, Citicorp has adequately pled and proven its damages, calculated pursuant to the liquidated damages provision of the Lease. This provision does not operate as a penalty. .

## CONCLUSION

The Administrative Claim Motion is granted. Citicorp shall have an allowed

---

**9.** The Debtor also argued that the residual value piece of the liquidated damages calculation (not to be less than 15% of the $210,000 purchase price), *see* Citicorp's Trial Exhibit 1, section 10(i)(y), rendered the liquidated damages clause a penalty, because the Debtor had modified the Lease to provide for a $1.00 purchase option and 15% of $210,000 was substantially more than 15% of $1.00. *See* Debtor's Post–Trial Brief at p. 8.

This argument fails for at least two reasons. First, Citicorp did not seek to recover the residual value of the Equipment from the Debtor. Citicorp did not seek this remedy (pursuant to which the Debtor would become the owner of the Equipment) because it elected a mutually exclusive remedy—*i.e.,* Citicorp elected to sell the Equipment to a third party and to credit the net sale proceeds against its other entitlements under the Lease.

Second, there is no evidence that the $1.00 purchase option unilaterally written into the Lease by the Debtor ever became a part of the Lease. Citicorp did not initial the change and there is no evidence to suggest that Citicorp agreed to the Debtor's proposed modification. One party's proposed modification must be accepted by the other party. *See County of Morris v. Fauver,* 153 N.J. 80, 707 A.2d 958, 967 (1998). A party cannot unilaterally modify a material provision of a contract. *See New Jersey Mfrs. v. O'Connell,* 300 N.J.Super. 1, 692 A.2d 51, 54 (1997). Here, the Debtor did not establish that the Lease had been modified to include the $1.00 purchase option.

administrative claim in the Case of $119,731.19. An Order consistent with this Memorandum Opinion shall be entered separately.